501 So.2d 330 (1987)
Leon P. GILBERT
v.
Gregory WADDELL and Willard Waddell.
No. CA-5566.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1987.
Rehearing Denied February 18, 1987.
Writs Denied April 23, 1987.
*331 J. Paul Demarest, New Orleans, for plaintiff-appellant.
Kurt S. Blankenship, Curry & Blankenship, New Orleans, for defendant-appellee Fidelity & Guar. Ins. Co.
Gus A. Fritchie, III, Francis P. Accardo, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendant-appellee U.S. Fire Ins. Co.
Gerald R. Cooper, Russell D. Thompson, New Orleans, for defendant-appellee Gregory Waddell.
Before SCHOTT, GARRISON and KLEES, JJ.
GARRISON, Judge.
Plaintiff has appealed from a judgment in his favor against the uninsured motorist insurer of the truck he was operating when an accident occurred. He seeks an increase in the quantum of his award. Defendant, Fidelity & Guaranty Insurance Co., Inc., answered the appeal to contest the trial court's finding that it afforded $500,000 of uninsured motorist coverage to plaintiff rather than $10,000. The issue in plaintiff's appeal is whether the trial court committed manifest error in finding that most of plaintiff's injuries at the time of the trial were not caused by the accident *332 sued on but by a subsequent accident. The principal issue in the U.M. carrier's appeal is whether the insured's election of $10,000 of UM coverage made several years prior to the accident automatically carried over when the policy was renewed several times at higher limits of liability and no additional elections or waivers were made by the insured with respect to the amount of U.M. coverage.
On September 16, 1981 plaintiff, Leon Gilbert, was involved in a truck-auto accident when the truck he was driving was struck from the rear by a car driven by defendant, Greg Waddell. Gilbert was driving a truck owned by his employer, Barriere Construction Co. Gilbert had been sent on a business errand by his employer. Barriere carried two policies on the vehicle, a primary business-auto liability policy, placed with Fidelity & Guaranty Insurance Co. (hereinafter "Fidelity") and an excess umbrella policy placed with U.S. Fire Insurance (hereinafter "U.S."). In addition, Mr. Gilbert's personal auto policy was placed with Lumberman's Mutual Cas. Co.
Greg Waddell was driving a car owned by his father, Willard Waddell. Greg Waddell was driving without a license which had been revoked due to a prior D.W.I. charge in Mississippi. Greg Waddell was specifically not covered by his father's policy with State Farm. State Farm had specifically required Waddell to sign a form indicating his exemption from coverage as a result of the D.W.I. conviction. In addition, it should be noted that Greg Waddell was not a minor at the time of the accident.
At the time of the accident, Gilbert was stopped. Waddell's vehicle was traveling at a maximum speed of 10 m.p.h. There was no damage[1] to either vehicle and no one was hurt other than Gilbert, who exited the vehicle immediately after the accident complaining about his neck.
Gilbert filed suit against Greg Waddell as driver and Willard Waddell as owner. The Waddell's third-partied their insurer, State Farm, who refused to defend the suit. Plaintiff then amended his suit to include State Farm and U.S. Fidelity & Guaranty Co. Fidelity & Guaranty Insurance Underwriters, Inc. intervened to recover workmen's comp payments made by it to Gilbert under Barriere's workmen's comp policy. Plaintiff then filed a Second Amending Petition adding Crum & Foster Insurance Co., an insurer of Barriere and a Fourth Amending Petition adding U.S. Fire Insurance Co., the umbrella insurer of Barriere.
Mr. Gilbert had been previously injured in 1976 while working at Monsanto when the implement on which he was standing collapsed. He fell 15 feet, broke two ribs and underwent back surgery as well. The auto accident at issue happened on September 16, 1981. In June of 1982 Mr. Gilbert allegedly reinjured himself while he and two other men hoisted a 15 pound electrical motor. Gilbert's arm "went numb." They did not drop the motor, nor did anyone fall. In November of 1983 he was admitted to the V.A. hospital for back surgery.
The instant accident involves only a neck injury. All of the rest of the accidents involve lower back injuries and most of the medical bills are for lower back surgery, not the neck surgery.
On appeal, Fidelity raises two specifications of error:
1. the trial court erred in holding that subsequent policies issued by Fidelity were new policies and not renewals, such that new U.M. waivers need not have been executed, and
2. the trial court erred in dismissing the umbrella insurer, U.S.
The first specification of error is clearly without merit. In 1976, T.W. Mauden, President of Barriere rejected U.M. *333 coverage equal to the face limits of the policy $100,000/$300,000 and elected U.M. coverage of $5,000/$10,000 limits. The term of that policy was May 1, 1976 to May 1, 1977. On May 1, 1977, Barriere's policy was issued with liability coverage increased to limits of $250,000/$500,000. No U.M. election was made at this time. Accordingly, under R.S. 22:1406, that policy was issued with U.M. coverage equal to the face limits of liability. On May 1, 1979 a policy was issued with single limits of liability equal to $500,000. No U.M. election was made. Annually on May 1st from 1979 on, policies were issued all with single limits of $500,000 and all without U.M. elections.
In Courville v. State Farm Mut. Auto. Ins. Co., 393 So.2d 703 (La., 1981) the La. Supreme Court held that:
"... Since the initial insurance contract is limited to that six-month term, each subsequent renewal is a separate contract, even though a new policy is not involved." At. 705.
In Sentilles v. State Farm Mut. Auto. Ins. Co., 443 So.2d 723 (La.App.4th, 1983) this court, citing Courville, found that a previously executed election of U.M. coverage could not be "carried over" to new contracts "because the insured did not sign any additional selection forms applicable to the new policies." At 727.
Accordingly, the first specification of error is without merit and the trial court judge did not err in finding that Fidelity's primary policy included U.M. coverage with a single $500,000 limit. Having thus concluded that the primary policy limit is $500,000, it would be necessary to substantially exhaust that amount prior to engaging U.M. coverage under the umbrella policy. Because the damages are $17,940.00, this issue need not be addressed.
On appeal, plaintiff raises two specifications of error, the U.M. issue discussed above and that the trial court erred in finding that Gilbert's two back surgeries were not the result of the September 16, 1981 accident.
We agree with the findings of the trial judge that the Waddell accident did not necessitate the two back surgeries which rather were the result of Mr. Gilbert's later accident. We note that the Waddell accident was so minor that no property damage occurred to either vehicle.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] Waddell testified that there was no damage to either vehicle. The police report indicated "Light" damage. Gilbert initially testified that the back of his truck was smashed in, but later changed his testimony to no damage. No claims for property damage to the vehicles were made by either party.