600 So.2d 829 (1992)
Betty Barbin DONAGHEY, Individually and as Natural Tutrix of Her Minor Daughter, Arlene Ponthieux, Plaintiff-Appellant,
v.
CUMIS INSURANCE SOCIETY, et al., Defendants-Appellees.
No. 90-1250.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
John T. Bennett, Marksville, for plaintiff-appellant.
Gold, Weems, Bruser, Sues & Rundell, Joseph R. Ballard, Sam Poole, Alexandria, for defendants-appellees.
Before YELVERTON and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
YELVERTON, Judge.
This appeal raises the question of whether an insured's one time rejection of uninsured/underinsured motorist coverage, pursuant to LSA-R.S. 22:1406D(1)(a)(i), is valid when the number of vehicles covered under the original automobile policy is increased. The trial court was of the opinion that such a rejection continued to be applicable. It granted the defendant-insurer's motion for summary judgment which raised the issue. We reverse.
In 1983 Lonnie Donaghey took out an automobile insurance policy with Worldwide Underwriters Insurance Company (Worldwide) insuring two Donaghey vehicles. Both vehicles were placed under one policy. This policy provided bodily injury coverage of $20,000 per person up to $40,000 per accident. Donaghey rejected UM coverage.
When Donaghey added a third car to the policy, the number of automobiles to be insured under the policy grew from two to three. Donaghey did not reject UM coverage or select lower limits after the third vehicle was added.
Subsequently, Arlene Ponthieux, Donaghey's minor stepdaughter (and then resident member of Donaghey's household), was injured in a car accident. Betty Barbin, who was Arlene's mother and Donaghey's former wife, sued, alleging that an *830 underinsured motorist's vehicle negligently struck the car in which Arlene was riding as a guest passenger. She alleged that Worldwide provided UM coverage for her child's damages.
Worldwide moved for summary judgment, which was granted, the trial judge ruling that Donaghey's initial rejection carried over after the addition of the third vehicle. Barbin appealed.
LSA-R.S. 22:1406D(1)(a)(i) reads:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
Uninsured motorists coverage is deemed to exist in all auto policies in amounts equal to liability limits unless the insured expressly rejects UM coverage or selects lower UM limits in accordance with the UM statute. Uhrich v. National Fire Ins. Co., 569 So.2d 1065 (La.App. 3rd Cir. 1990), writ denied, 572 So.2d 96 (La.1991).
Barbin relies on the fact that Worldwide failed to obtain Donaghey's express rejection of UM coverage for the third vehicle. She argues that, without such rejection, Worldwide is statutorily required to provide UM coverage in amounts equal to the policy's liability limitsin this case $20,000. If she is right, then we must necessarily rule that § 1406 D places an affirmative duty on the insurer to provide its insured with the opportunity to expressly reject or deny UM coverage whenever the number of vehicles insured under the policy is increased.
On the other hand, Worldwide takes the position that Donaghey's original, onetime rejection of UM coverage applies to any subsequent vehicles that are added to his original policy. Specifically, Worldwide relies on the last sentence of LSA-R.S. 22:1406D(1)(a)(i):
Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
This language means that an insured's initial rejection of UM coverage will absolve the insurer from UM liability in subsequent reinstatement, renewal, or substitute policies. Bryant v. Viking Ins. Co. Wisconsin, 579 So.2d 1241 (La.App. 3rd Cir.1991). Worldwide argues that Donaghey's addition of the third car amounts to no more than a renewal of the original policy. Since renewal policies do not require a separate rejection or selection of lower limits, it is Worldwide's position that the trial court's order for a summary judgment was appropriate.
Worldwide's argument depends primarily on the case of Mouton v. Guillory, 494 So.2d 1374 (La.App. 3rd Cir.1986). There, an insured validly rejected UM coverage on a policy that was effective from July 1, 1980, through July 1, 1981. The policy was renewed effective from July 1, 1981, through July 1, 1982. The renewal policy *831 contained many additional endorsements that were not present in the original policy. At issue was whether the insured's valid rejection of UM insurance for the 1980-1981 policy was also valid for the 1981-1982 period. This court held that it was. Judge King, writing for the panel, viewed the 1981-1982 policy, even with its "many endorsements", as a mere renewal of the original policy. Except to describe the endorsements as "many", the opinion did not identify them or otherwise explain what impact they had on the contract of insurance.
In the case before us, the alleged renewal policy has only one additional term or endorsementthe third car. There is virtually no other difference between the alleged renewal and the original policy. Since the Mouton renewal policy had several changes from its original, Worldwide argues that Donaghey's policy, having only one change from its original, should easily qualify as a renewal.
Some three years after Mouton, this court decided Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d 1250 (La.App. 3rd Cir.1989). In Guilbeau the insured raised his bodily injury coverage limits, but the insurer did not require a new rejection or selection of lower limits. We held that in that circumstance a separate rejection of UM coverage or selection of lower limits was required before the insurer could be relieved of its statutory obligation to provide UM coverage. We explained our reasoning as follows:
[W]hen the bodily injury limits of a policy are increased, the insurer is agreeing to provide and the insured is agreeing to purchase additional bodily injury coverage not previously provided. If the original selection of lower limits of uninsured motorist coverage is presumed to remain in effect when the bodily injury limits of the policy are increased, this would result in a situation where an insured is found to reject additional uninsured motorist coverage before the opportunity exists to accept such additional coverage. We do not believe this was the intent of the legislature when it enacted La.R.S. 22:1406(D)(1)(a).
The First Circuit in Gaar v. Sowards, 573 So.2d 499 (La.App. 1st Cir.), writ denied, 569 So.2d 990 (La.1990), agreed with our decision in Guilbeau. It held that increasing the limits of liability coverage is a new policy, requiring a new rejection or selection of lower limits of UM coverage. The Fourth Circuit reached the same holding in Gilbert v. Waddell, 501 So.2d 330 (La.App. 4th Cir.1987), writ denied, 505 So.2d 57 (La.1987).
There is dicta in Moore v. Young, 490 So.2d 519 (La.App. 4th Cir.1986), which declared that a policy with different coverage may be a renewal policy. The decision in Moore cited Myers v. Thibeaux, 365 So.2d 266 (La.App. 3rd Cir.1978), which allowed an earlier rejection to be carried over in a substitute policy where "Myers changed cars and required slightly different limits and coverage."
We have considered these cases, and we choose to adhere to the views expressed in Guilbeau and Gaar, supra. Applying the reasoning of these cases to the present dispute, we now ask ourselves whether the addition of a car to an automobile policy, with no change in bodily injury limits, amounts to an increase in that policy's coverage. If the answer is yes, then the Donaghey policy is more than a mere renewal and a new rejection or selection of lower limits was required. If the answer is no, then the policy is a renewal and the rejection is deemed to have been carried over.
We think that the answer is yesthe addition of the car did increase the policy's coverage thereby requiring a separate rejection of UM insurance. Since no separate rejection exists, we reverse the lower court's summary judgment.
The basis for our decision is the public policy behind § 1406D(1)(a)(i). Our Supreme Court, in Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987) explained the reasons for the statute's existence:
In Louisiana, UM coverage is provided for by statute and embodies a strong public policy. A.I.U. Ins. Co. v. Roberts, *832 404 So.2d 948 (La.1981); Breaux v. Government Employees Ins. Co., 369 So.2d 1335 (La.1979). The object of the statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982). Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982).
The court further explained how this policy was to be effectuated:
To carry out this objective of providing reparation for those injured through no fault of their own, this Court has held the statute is to be liberally construed. Hoefly, supra. Thus, the requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. A.I.U. Ins. Co., supra.
UM coverage is determined not only by contractual provisions, but also by applicable statutes. In the absence of a specific rule, general insurance law governs. A.I.U. Ins. Co., supra. The liberal construction given the UM statute requires the statutory exceptions to the coverage requirement be interpreted strictly. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Dorsey v. Board of Trustees, State Employees Group Benefits Program, 482 So.2d 735 (La.App. 1st Cir.1985), writ denied, 486 So.2d 735 (La.1986); Landry v. La. Hosp. Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984); Stewart v. La. Farm Bureau Mutual Ins. Co., 420 So.2d 1217 (La.App. 3d Cir.1982).
Since the statutory exceptions to 22:1406D(1)(a)(i) are to be interpreted strictly, and since it is not clear and unmistakable that Donaghey intended to reject UM coverage for the third vehicle, we think that the purpose of the statute is better fulfilled by holding Worldwide accountable for UM coverage up to Donaghey's original bodily injury limits of $20,000.
For the foregoing reasons, the lower court's decision to grant summary judgment is reversed. Costs of this appeal will be paid by Worldwide.
REVERSED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.