CARTER, Judge.
This appeal is from a trial court judgment in favor of defendant, Commercial Union Insurance Companies (“Commercial”), and against plaintiff, AFCO Credit Corporation (“AFCO”).
FACTS
On January 14, 1987, B. Clemons, Inc. (“Clemons”), a trucking company, submitted an application for insurance coverage indicating that it owned and operated certain tractor-trailer rigs. The application was submitted through the Commercial Automobile Insurance Plan (“CAIP”), which is operated by the Louisiana Automobile Insurance Plan. CAIP is an assigned risk program which is authorized under LSA-R.S. 22:1417 and provides liability insurance coverage to parties who cannot obtain commercial automobile liability insurance in the regular insurance market.
To underwrite the assigned risk plan, CAIP contracts with insurers to serve as servicing carriers. These carriers must comply with certain procedures and requirements set forth in the CAIP Manual. The carriers have no discretion in accepting a certain risk, nor do they have discretion *965 as to the policy form used or premiums charged. Commercial was assigned as Clemons’ servicing carrier and issued Clemons’ policy under a policy form entitled “Commercial Lines' Policy, Commercial Auto Coverage Part, Business Auto Declarations” (“Business Auto Form”). Under the CAIP Manual, this was the proper policy form to use when a company operates only owned vehicles.[1]
The first policy that Commercial issued to Clemons was effective from January 15, 1987, through January 15, 1988, and it was renewed the following year under the same policy number and form. For the second policy term, Clemons financed the premium through AFCO. Notice of the financing agreement was sent to Commercial.
The CAIP Manual provides that if the operations are found to be other than as represented by the policyholder, an adjustment is to be made in the policy form and/or premiums of the policyholder. As authorized by the Manual, Commercial performed a risk control inspection of the books and operations of Clemons. On January 25, 1988, Commercial discovered new information regarding the operations of Clemons’ trucking business; Clemons had been leasing trucks owned by others on a short-term basis, which created a risk referred to as “hired truckmen’s exposure.” The initial policy form issued by Commercial was a Business Auto Form, which did not cover this particular exposure. It then became necessary for Commercial to change Clemons’ policy form in order to cover the actual risks created by its operations.[2]
To accomplish the change in policy form, Commercial’s underwriting department issued a “Cancellation-Credit Memo” on March 29, 1988. Commercial contends that the memo is used only for internal purposes to either cancel an existing coverage or credit an existing policy account for a certain amount of premium. The memo indicated that the cancellation was on a “flat” basis, meaning that the entire premium was credited back to the inception date of the policy, January 15, 1988. It showed a return premium in the amount of $36,-906[3] and indicated that the policy was rewritten on a different policy form.
On March 28, 1988, Commercial issued a new policy form entitled “Commercial Lines Policy, Commercial Auto Coverage Part, Truckers Declarations.” Because there were added risks associated with Clemons’ use of non-owned trucks, the CAIP Manual required a different risk rating, which resulted in a higher premium. The new premium was determined to be $157,012.00, subject to adjustment after audit. Commercial then transferred the initial $36,000.00 premium to the new policy form and notified Clemons of the additional premium owed.[4]
At approximately the same time the risk control inspection was performed, an audit report was issued. The audit indicated that Clemons owed an additional premium of $4,368.00 for the previous year. In accordance with CAIP procedures, Commercial issued a cancellation notice on March 8, 1988, which cancelled insurance coverage effective April 13, 1988, at 12:01 A.M. At the time of cancellation, on April 13, 1988, no return premium was due Clemons, and *966 AFCO does not claim any return premium from that cancellation. AFCO contends that it is entitled to a return premium only as the result of Commercial’s actions on March 29, 1988.
AFCO contends that Commercial’s actions on March 29, 1988, constituted a cancellation of the policy, requiring a return to AFCO of $23,133.44 in unearned premiums, pursuant to LSA-R.S. 9:3550H, which provides, in pertinent part, as follows:
Whenever a financed insurance contract is cancelled, the insurer shall return whatever gross unearned premiums, less any unearned commissions due the insurer, are due under the insurance contract to the insurance premium finance company for the account of the insured or insureds as soon as reasonably possible but in no event shall the period for payment exceed sixty days after the effective date of cancellation....
AFCO made repeated attempts to collect the alleged unearned premium from Commercial and, on March 28, 1989, filed the instant suit against Commercial to collect the $23,133.44.
AFCO filed a motion for summary judgment, which was denied by the trial court. By stipulation between the parties, the matter was then submitted for decision to the trial court based on depositions and exhibits. On August 23, 1991, the trial court rendered judgment in favor of Commercial, finding that there had been no cancellation of the policy. From this adverse judgment, AFCO appeals, contending that the trial court erred in finding that AFCO was not entitled to a return of the premiums following the cancellation of the policy.
DISCUSSION
The essential question in this case is whether Commercial’s actions on March 29, 1988, constituted a cancellation of Clemons’ insurance contract. LSA-R.S. 22:636 sets forth the procedures that an insurer must follow to effectively cancel an insurance policy and provides, in pertinent part, as follows:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1)(a) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than twenty days prior to the effective date of the cancellation except where termination of coverage is for nonpayment of premium.
[[Image here]]
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.
[[Image here]]
(4) Any policy may be cancelled by the company at any time during the policy period for failure to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under a premium finance plan or extension of credit, by mailing or delivering to the insured written notice stating when, not less than ten days thereafter, such cancellation shall be effective ....
In the instant case, Commercial did not mail or deliver a “Notice of Cancellation” to Clemons or to AFCO following the policy rewrite on March 28, 1988. Although Clemons’ insurance agent received a copy of the “Cancellation-Credit Memo,” the testimony established that the memo was only an internal document used by Commercial’s underwriting department to notify the accounting department of the transfer of the premium from one policy form to another. The memo indicated that the policy was rewritten on a different policy form and that no legal notice .of cancellation was required because it was merely a rewrite.
Commercial had no discretion in rewriting the policy. Commercial was merely a servicing carrier of CAIP, and CAIP proce *967 dures required it to rewrite the policy on a different form in order to cover all risks presented by the operations of Clemons’ trucking business. From the beginning, AFCO was aware that the premiums for Clemons’ policy were subject to adjustment by audit. AFCO’s knowledge was acknowledged in the premium finance agreement, which provided as follows:
18. ADDITIONAL PREMIUMS: The money paid by Afeo is only for the premium as determined at the time the insurance policy is issued. Afco’s payments shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. Afeo may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to Afeo.
Although the premium finance agreement purports to limit the insurance company’s right to apply AFCO’s payments to the premium which is initially determined to be due, Commercial is not a party to that agreement and is not bound by it. Therefore, Commercial could apply the funds it received from AFCO to the actual premium due under the new policy form.
Moreover, in the instant case, there was a .“misclassification of the risk” in that Clemons failed to indicate in its application that it operated hired trucks on a short-term basis. In rewriting the insurance policy, Commercial was in compliance with all of the following: (1) CAIP procedures, (2) the insurance policy, and (3) Clemons’ intent to have coverage for all of its trucking operations. It is clear then that Clemons owed the additional premium to Commercial, and Clemons was not due any return premiums. As Clemons’ assignee, AFCO is entitled to no greater rights than those held by Clemons.
The trial court found that there was no cancellation of the policy on March 29, 1988. “Cancellation” of insurance coverage occurs when, during the policy period or term, coverage is terminated. LSA-R.S. 22:636; Guidry v. Shelter Insurance Company 535 So.2d 393, 396 (La.App. 3rd Cir.1988); Carson v. Dickerson, 512 So.2d 1188, 1189 (La.App. 1st Cir.1987). Testimony established that Clemons was never without insurance coverage. The rewritten policy form was made effective back to the inception date of the first policy form issued, and the entire premium was applied to the rewritten policy. As a result, there was no unearned premium, and LSA-R.S. 9:3550H is not applicable. Accordingly, AFCO’s specification of error is without merit.
CONCLUSION
For the foregoing reasons, the trial court judgment dismissing AFCO’s claims against Commercial is affirmed. Costs of this appeal are assessed against AFCO.
AFFIRMED.

. In its application for insurance coverage, Clemons indicated that it operated only vehicles which it owned.

. The CAIP Manual required Commercial to insure all automobile liability risks resulting from Clemons' operations, and the Manual indicated that the correct policy form for the risks involved was the "Trucker’s Declarations Form.”

. It was stipulated by all parties before trial that the maximum return due AFCO would be $23,-133.44.

.The initial policy issued by Commercial to Clemons contained the following language regarding changing the premium:
6. PREMIUM AUDIT
a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.