783 So.2d 1282 (2001)
AMERICAN DEPOSIT INSURANCE COMPANY
v.
Ivory MYLES, Bobbie Myles, Windy Myles, and Courtney Myles.
No. 2000-C-2457.
Supreme Court of Louisiana.
April 25, 2001.
*1283 David I. Bordelon, William H. Eckert, Donald R. Klotz, Jr., Metairie, Counsel for Applicant.
Berit C. Hanna, Metairie, James H. Minge, New Orleans, Counsel for Respondent.
CALOGERO, Chief Justice.
This action for declaratory judgment arises out of a dispute over insurance coverage for an automobile accident that occurred on January 23, 1998. American Deposit Insurance Company filed the lawsuit alleging that a named driver exclusion precluded coverage in this case because the excluded driver, Windy Myles, was the driver of her father's otherwise insured vehicle at the time of the accident. The First City Court of the City of New Orleans granted plaintiff American Deposit's motion for summary judgment based upon the exclusion. The Court of Appeal thereafter reversed and remanded the case for further proceedings, reasoning that a genuine issue of material fact remained as to whether the addition of a new vehicle to a policy after the execution of the named driver exclusion served to create a new policy, one without a named driver exclusion. We granted the writ application of the insurer, American Deposit, to resolve this legal issue in the case before the case is tried.

Facts
On January 23, 1998, Windy Myles was driving a 1991 Toyota Camry automobile with two passengers in the vehicle, Bobbie Myles, her mother, and Courtney Myles, her minor sister. As Windy crossed through an intersection, an oncoming vehicle driven by Joseph Lacaze turned left into her path and a collision took place. Joseph Lacaze was uninsured, but the Myles vehicle was insured by a policy purchased by Ivory Myles, Sr., Windy's father, from American Deposit Insurance Company, the plaintiff herein.
*1284 American Deposit's policy of insurance included uninsured motorist coverage with limits of $10,000 per person and $20,000 per accident. The policy was initially purchased by Ivory Myles, Sr. and it covered only the 1991 Toyota Camry involved in this accident. On April 13, 1993, Ivory Myles, Sr. executed two named driver exclusions precluding coverage for the insured vehicle when either of his children, Windy Myles (age 16) or Ivory Myles, Jr. (age 21), were driving the automobile. The entirety of the exclusion applicable to Windy Myles provides, with all emphasis in the original document:
NAMED DRIVER EXCLUSION
LOUISIANA
In consideration of the premium charged, it is hereby agreed that ALL coverages are not afforded under this policy while any vehicle is being used, driven, operated or manipulated by, or under the care, custody or control of the following person:
 Wendy [sic] Myles
 Full Name of Driver Excluded
Policy Number: DLA 2571871 Effective
Date: 02/16/93
Named Insured: Ivory Myles, Sr.
This exclusion applies to the named excluded driver and passengers whether or not he or she has received express or implied permission to drive.
This exclusion shall be effective when signed, and forms a part of the policy when issued. This exclusion applies to all REWRITE OR RENEWAL POLICIES unless changed in writing by the insured and the Company. The provisions of this endorsement supersede any contrary provision(s) contained in the policy.
It is further agreed that in the event that the Company shall become legally obligated to pay any sum or sums of money because of loss for which there would be no coverage because of the exclusions contained herein, the insured will reimburse the Company for any and all sums, costs and expenses paid or incurred by the Company.
All other parts of the policy remain unchanged.
The excluded driver listed above consents and agrees to this exclusion and further warrants that he or she is a resident of the named insured's household, whether or not temporarily residing elsewhere.
 s/Windy Miles [sic] 4-13-93
-------------------------- ----------
 Named Excluded Driver Date
The named insured consents and agrees to
 the terms of this exclusion.
 s/Ivory Myles 4-13-93
-------------------------- -----------
 Named Insured Date
Authorized Representative: _________________
As indicated on the exclusion, the policy number when the exclusion was executed was: DLA 2571871. Thereafter, although the exact date is not clear from the record, a 1994 Lincoln Town Car was added to the policy. The declarations page of the policy in effect at the time of the accident indicates a policy number of XXX-XXXXXXX and reflects coverage for both the Toyota Camry and the Lincoln Town Car including the UM coverage described above.
On September 30, 1998, American Deposit filed this declaratory judgment action *1285 in the First City Court of the City of New Orleans against Ivory (Windy's father), Bobbie (Windy's mother), Windy, and Courtney Myles (Windy's sister) seeking a judgment declaring that it owed no coverage for the accident.[1] Following an answer by the Myleses denying the allegations of American Deposit, the latter filed a motion for summary judgment arguing that no coverage for the accident was owed because of the named driver exclusion and the fact that Windy was driving the 1991 Toyota Camry at the time of the accident. Following briefing and oral argument, the city court granted American Deposit's motion for summary judgment and entered judgment accordingly. The Myleses appealed to the Fourth Circuit Court of Appeal.
A three-judge panel of the court of appeal reversed the city court judgment and found a genuine issue of material fact existed as to whether the named driver exclusion signed by Windy was part of the policy in effect on January 23, 1998 in light of the fact that the 1994 Lincoln Town Car had been added in the interim. American Deposit Ins. Co. v. Myles, 99-2659, p. 5 (La.App. 4 Cir. 5/31/00), 764 So.2d 173, 175-76. More specifically, the court found that insurance exclusions must be strictly construed against the insurer in favor of coverage and that the policy at issue did not define the terms "rewrite or renewal policies," a pair of references used in the named driver exclusion signed by Ivory Myles, Sr. Further, the court reasoned that, in the absence of policy language defining those terms, UM policy jurisprudence holding a new policy to be created when a vehicle is added, was persuasive. Accordingly, the city court's granting of American Deposit's motion for summary judgment was reversed, and American Deposit's application for rehearing in the court of appeal was denied. We granted the writ application of American Deposit. American Deposit Ins. Co. v. Myles, 00-2457 (La.11/13/00), 773 So.2d 152. American Deposit has raised a preliminary argument that we address at the outset of this opinion.

Re-argument before the Fourth Circuit
American Deposit argues that it is entitled to re-argument in this case, in which the court of appeal reversed the city court judgment by a 2-1 margin, before a five-judge panel of the court of appeal. In reference to the courts of appeal, the Louisiana Constitution states:
JUDGMENTS. A majority of the judges sitting in a case must concur to render judgment. However, in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
La. Const. Art. V, § 8(B). By its very terms, this provision is limited to district court judgments which are modified or reversed. Lee Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L.Rev. 765, 808 (1977). Therefore, by implication, this provision does not apply to city court judgments. The case at bar originated in the First City Court of the City of New Orleans. Consequently, the constitution does not require *1286 re-argument following reversal by the court of appeal in this case. We turn now to the merits of the case.

Summary Judgment
The present case arises from the city court's granting American Deposit's motion for summary judgment. A motion for summary judgment should be granted when the mover can show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ. Pro. art. 966(C)(1). When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide. Sanders v. Ashland Oil, Inc., 96-1751, pp. 5, 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035, 1037; Slocum Stevens Ins. Agency, Inc. v. International Risk Consultants, Inc., 27,353, pp. 6-7 (La.App. 2 Cir. 12/11/95), 666 So.2d 352, 357. Thus, when the parties agree that a valid contract binds them and that the material facts involved in the dispute are not contested, the contract's application to a case is a matter of law and summary judgment is appropriate. Bolton v. Tulane Univ., 96-1246, p. 22 (La.App. 4 Cir. 1/29/97), 692 So.2d 1113, 1125. Here, the following material facts are undisputed: (1) Windy was driving the 1991 Toyota Camry at the time of the accident; (2) a named driver exclusion was executed in 1993 purporting to exclude her from coverage under the policy in place at that time; and (3) after the exclusion was executed, a 1994 Lincoln Town Car was added to the then-existing policy. Thus, the only question remaining, a question that can be answered as a matter of law, is whether the exclusion signed in 1993 excludes Windy from coverage under the policy in effect in 1998 at the time of the accident.

The Named Driver Exclusion
Louisiana law requires that liability insurance policies issued in this state shall insure the named insured and any other person using the motor vehicle with the insured's permission, whether express or implied, for damages resulting from the ownership, maintenance, or use of the motor vehicle. La.Rev.Stat. § 32:900(B)(2). However, "an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured." La.Rev.Stat. § 32:900(L). Although earlier this term we found that this provision did not permit the owner of a policy to exclude himself from coverage, Williams v. U.S. Agencies Cas. Ins. Co., 00-1693, pp. 3-4 (La.9/29/00), 769 So.2d 1217, our courts have otherwise approved the use of the named driver exclusion for other members of the policy owner's household, see, e.g., Bellard v. Johnson, 96-0909, p. 1 (La.5/30/97), 694 So.2d 225, 225 (per curiam) (exclusion of a spouse); Green v. Bailey, 29,759, p. 5 (La.App. 2 Cir. 8/20/97), 698 So.2d 715, 718 (exclusion of a son); Carter v. Patterson, 96-0111, p. 8 (La.App. 4 Cir. 5/22/96), 675 So.2d 736, 740 (exclusion of a daughter). Thus, there is no question that the named driver exclusion precluding coverage for Windy Myles's operation of the Toyota Camry under the policy was valid in 1993 when signed by Ivory Myles, Sr. The issue before us is the applicability and continuing enforceability of that exclusion in 1998 regarding Windy's operation of the Toyota Camry in light of the fact that a Lincoln Town Car was added sometime between the time the exclusion was first signed in 1993 and the time that the accident took place in 1998.
The terms of an insurance contract have the effect of law between the parties. *1287 La. Civ.Code art. 1983. Here, the named driver exclusion agreed to by Myles and American Deposit specifically states that it applies "to all REWRITE OR RENEWAL POLICIES." (Emphasis in original). Thus, if the policy at issue, which covers the Toyota Camry and the Lincoln Town Car, constitutes a rewrite or renewal of the policy in effect in 1993, the 1993 named driver exclusion will apply and coverage is excluded for this accident. On the other hand, if the policy at issue is something other than a rewrite or renewal of the 1993 policy, the exclusion is inapplicable.[2]
The term "rewrite policy" is not defined in the policy itself, but this fact alone does not make the exclusion ambiguous; instead, we will give the term its generally prevailing meaning. La. Civ. Code art. 2047. Although not defined in the leading insurance law treatises, the Oxford English Dictionary defines "rewrite" as: "To write again, [especially] in a different form." Oxford English Dictionary Vol. XIII, 847 (2nd ed. 1989). Thus, the term contemplates a revision of text that does not substantially alter the content, but simply revises the expression of it. Within the context of an insurance policy, to rewrite an insurance policy would mean to revise the terms and conditions of coverage without affecting the substantive rights of the insurer or insured and in such a manner that the rewrite policy is substantially the same as the policy it is rewriting. Thus, a rewrite occurs when an insurer changes the policy form or makes other relatively minor changes that do not significantly affect the level of coverage owed to the insured. Under this definition, a policy on a single vehicle is not rewritten by (1) adding a vehicle to that policy or (2) issuing a new policy covering two vehicles.[3]
When an insured adds a vehicle to the coverage afforded by an existing policy, that action is significant on many levels. The exposure of the insurance company substantially increases from insuring one vehicle to insuring two. By increasing the coverage in such manner, a significant raise in premiums is imposed. This premium increase is not instituted at the discretion of the insurer's agent; instead, it is based upon complex formulas indicating the new premium that would sufficiently cover the higher level of risk that the insureds pose from the operation of two motor vehicles instead of one. When the vehicle is added, the insured and an agent of the insurer execute a new agreement that operates to create a new coverage over a new automobile. This significant addition is not what could be reasonably referred to as a rewrite; consequently, the *1288 policy in effect at the time of the accident in this case is not a rewrite of the 1993 policy because the Lincoln Town Car was added in the interim. Because the policy in effect at the time of the accident is not a rewrite of the 1993 policy, it is only subject to the named driver exclusion if it constitutes a renewal of the 1993 policy, the second term used in the named driver exclusion.
The term "renewal policy" is not defined in the policy itself, but we need not look far to ascertain its meaning. According to the Insurance Code, a renewal policy is "a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term." La.Rev. Stat. § 22:636.1(A)(5). Thus, the concept of a renewal policy requires, among other things, a continuation of coverage without interruption. Stephenson v. Van Vleit, 96-1407, p. 12 (La.App. 3 Cir. 4/30/97), 693 So.2d 858, 865; Dempsey v. Automotive Cas. Ins., 95-2108, p. 8 (La.App. 1 Cir. 6/28/96), 680 So.2d 675, 679; Lovoi v. Ladreyt, 94-1002, p. 2 (La.App. 5 Cir. 4/12/95), 655 So.2d 387, 388. Further, by the statute's very terms, a renewal can only occur at the end of the policy period that it renews, not before. Smith, 98-1142 at 7, 734 So.2d at 927; Stephenson, 96-1407 at 12, 693 So.2d at 865; Dempsey, 5-2108 at 8, 680 So.2d at 679. Finally, as a general rule, when a policy is renewed, the same terms and conditions of the prior policy will apply to the renewal policy. 1 Eric Mills Holmes, Appleman on Insurance § 4.16, p. 463 (2nd ed. 1996); 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 29.35 (3rd ed. 1997); 1 Allan D. Windt, Insurance Claims & Disputes § 6.09, p. 396 (3rd ed. 1995). Here, although the record is silent as to exactly when it occurred, we do know that the level of coverage afforded to Ivory Myles, Sr. by American Deposit expanded when the Lincoln Town Car was added to the policy. This addition in coverage is not simply a continuation of the same terms and conditions of a prior policy; instead, it is a substantial increase in the policy's scope of coverage.[4] Consequently, the policy at issue which insures two vehicles is not a "renewal" of the 1993 policy which only insured one vehicle and which contained the named driver exclusion.[5]
*1289 In further support of this position, Relators cite Donaghey v. Cumis Insurance Society, 600 So.2d 829, 831 (La.App. 3rd Cir.1992), in which the court found that the addition of a vehicle to an existing policy creates an altogether new policy requiring that new UM waiver forms be executed.[6] As the court of appeal in this case noted, "the Donaghey decision does not mandate a particular result in this case;" however, "the jurisprudence developed under the UM statute is persuasive in this situation." American Deposit, 99-2659 at 5, 764 So.2d at 175. The Donaghey rule is based upon the premise that a waiver of UM coverage signed prior to an expansion of coverage, as in the case of adding an automobile, can no longer be valid because an individual would be rejecting coverage before the opportunity ever existed to accept it. Donaghey, 600 So.2d at 831 (quoting Guilbeau v. Shelter Mut. Ins. Co., 549 So.2d 1250, 1255 (La.App. 3rd Cir.1989)). Although that rule of law as it applies to UM waivers was legislatively overruled by La. Acts 1999, No. 732, § 1, we find the reasoning applicable in this situation.[7]
When Ivory Myles, Sr. executed the named driver exclusion in 1993, he was excluding coverage in situations during which his daughter would be operating the 1991 Toyota Camry. In doing so, Myles contemplated that the exclusion would apply to the current policy as well as to any rewrites or renewals of that policy. By purchasing the Lincoln Town Car, Myles's need for insurance changed dramatically. The law required him to secure coverage for the new vehicle. He therefore bought a new policy of insurance that would cover both vehicles. The conclusion that back in 1993 Myles executed an exclusion from coverage that did not yet exist, on a vehicle he did not yet own, is not reasonable. Instead, the addition of a car in this case after the exclusion was signed in 1993 served to create a new policy requiring a new named driver exclusion if the parties desired that no coverage would attach when Windy Myles operated either the 1991 Toyota Camry or the 1994 Lincoln Town Car. Therefore, the policy in effect at the time of the accident was not a renewal of the 1993 policy.
In sum, the policy in effect at the time of the accident was neither a rewrite nor renewal of the policy in effect at the time the named driver exclusion was executed in 1993. Further, no additional named driver exclusions have been signed that are applicable to the new policy covering the two vehicles in effect at the time of the *1290 accident in 1998. Therefore, Windy Myles was not excluded from coverage under the policy of insurance in effect in 1998 issued by American Deposit to Ivory Myles, Sr.

Conclusion
Insurance policies are contracts subject to the basic rules of interpretation like all other contracts. By its explicit terms, the named driver exclusion was applicable to the original 1993 policy as well as to rewrite policies and renewal policies. Here, for the reasons expressed above, we find that the policy in effect at the time of the accident was not a rewrite or renewal of the 1993 policy. Therefore, American Deposit's motion for summary judgment was properly denied by the court of appeal when it reversed the contrary decision by the city court.

DECREE
For the foregoing reasons, the decision of the Court of Appeal is affirmed. American Deposit Insurance Company's motion for summary judgment is denied and the case is remanded to the First City Court of the City of New Orleans for further proceedings.
AFFIRMED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by VICTORY, J.
LEMMON, J., concurring.
The awkwardly worded exclusion is at least subject to two reasonable interpretations. Under such circumstances, the policy exclusion is construed against the insurer and in favor of coverage. If the insurer meant that the named insured's execution of the named driver exclusion applies to any policy thereafter issued to the named insured, it should have said so in plain terms.[1]
VICTORY, J., dissenting.
I do not agree with the result reached by the majority in this case. In 1993, Ivory Myles, Sr. opted to include two "named driver exclusions" in his auto policy. The effect of the exclusions was to preclude all coverage under his policy when his two children, Wendy and Ivory, Jr., were driving. The named insured, Ivory Myles, Sr., and the two children each executed the required special endorsements to the policy. It is undisputed that in consideration of excluding these drivers, Mr. Myles enjoyed a premium that was substantially less than it would otherwise have been had his children not been excluded. The special endorsement form used recites that the coverage is limited "in consideration of the premium charged." Each "named driver exclusion" executed in 1993 specifically provided that it would apply to all "renewal policies" unless changed in writing by the insured or the Company. There is no evidence to suggest that such a change ever occurred.
On Jan. 23, 1998 an accident occurred when Wendy Myles, one of the drivers excluded in 1993, was driving a vehicle owned by her father. The father's policy in effect at the time of the accident is clearly labeled and described on the policy documents as a renewal of the same auto *1291 policy that was in force in 1993 when the "named driver exclusion" was executed and the policy numbers so reflect. The 1997-98 American Deposit policy under which coverage is claimed contains at the top of the Declarations Page the following language:
RENEWAL OF POLICY
COMBINATION AUTO POLICY
RENEWAL DECLARATIONS * * EFFECTIVE 02/16/97 THIS POLICY BEGINS ON 02/16/97 AT 12 01 AM AND SHALL EXPIRE ON 02/16/98... [emphasis added]
The renewal policy declaration sheet provides a list of the covered drivers, their license numbers, and birth dates. The two children excluded from coverage in 1993 are specifically noted as excluded drivers on the 1997-98 renewal policy as follows:

Driver Driver License Birth
ID Name Number Date
01 Ivory Myles, Sr. XXXXXXXXXXX 01/17/46
02 Bobbie Myles XXXXXXXXX 01/13/50
03 Ivory Myles Jr Excluded 02/02/72
04 Wendy Myles Excluded 05/30/76
 [Emphasis added]

Immediately following the list of covered and excluded drivers, the declaration page of the renewal policy lists "applicable forms" as including "FORM E510." Form E510 is the Form executed as the "named driver exclusion" in 1993, which specifically provided that it would remain in force unless changed in writing. The 1997-98 policy was again issued for a reduced premium in consideration of the exclusion of Wendy Myles and Ivory Myles, Jr.
As noted by Judge Ciaccio in his dissent in the court of appeal, the trial judge had sufficient evidence from which to conclude that the policy in force in 1997-98, when the accident occurred, was a "renewal policy" within the intendment of the contracting parties. That being the case, the exclusion executed in 1993 remained in force in accordance with their contractual agreements. No relevant countervailing evidence was presented in opposition to the Motion for Summary Judgment. For that reason, the court of appeal erred in reversing the Motion of Summary Judgment rendered by the trial judge.
It should be noted that this case involves only the coverage available to family members of Ivory Myles Sr., who purchased the policy at issue and excluded coverage when vehicles were being driven by certain family members in return for a reduced premium. In my view, the addition of the Lincoln to the Myles policy at some point between 1993 and the date of the accident does not defeat the effectiveness of the 1993 "named driver" exclusion. Whatever the meaning attributed to the term "renewal policy" in other contexts, in this case the documents clearly indicate on their face that the parties to this insurance contract considered the 1997-98 policy a "renewal" of the same policy in force when the 1993 "named driver" exclusion was executed. The contract of insurance is the law between the parties.
Accordingly, I respectfully dissent.
NOTES
[1] The Myleses also filed a separate suit against American Deposit and Joseph Lacaze; however, that suit has not been consolidated with this one; therefore, that matter is not before us.
[2] Any argument that the named driver exclusion remains valid as to the 1991 Toyota Camry only is without merit. The liability in the accident is determined solely by the policy in effect at the time of the accident. If the named driver exclusion is part of that policy, it excludes coverage "while any vehicle," Toyota Camry or otherwise, is operated by Windy. If the named driver exclusion is not part of the policy, coverage must be found under the omnibus liability clause.
[3] We are aware of the one Louisiana case speaking of a rewrite policy; however, the court's mention of a "rewrite" of a policy in that case was not instructive. In AFCO Credit Corp. v. Commercial Union Insurance Co., 615 So.2d 964, 965 (La.App. 1st Cir.1993), the First Circuit mentioned in passing that an insurance policy was "merely a rewrite" when the insurer had issued a new policy form upon discovering that the form previously issued was incorrect. The court did not define the term and we express no opinion as to whether the First Circuit's use of the term was consistent with our definition of a "rewrite policy" today.
[4] The mere fact that this expansion of coverage does not fit the definition of renewal is enough to support our finding that the current policy is not a renewal of the 1993 policy; however, were there a more complete record in this case, we may have been able to find even more support for this conclusion. The policies issued by American Deposit to Ivory Myles appeared to begin and end on February 16 of each year. If the Lincoln Town Car was added to the policy on any day other than February 16 in any given year, the addition would not have occurred on the last day of the then-existing policy as required for a renewal under La.Rev.Stat. § 22:636.1(A)(5).
[5] We are cognizant of the court of appeal's lone dissenter's arguments that the policy at issue was simply a renewal of the former based on (1) policy numbers which were almost identical and (2) language on the declarations page. American Deposit Ins. Co. v. Myles, 99-2659, p. 1 (La.App. 4 Cir. 5/31/00), 764 So.2d 173, 176 (Ciaccio, J., dissenting). First, while the initial policy did have the number DLA 2571871 and the policy at issue has the number 117 2571871, any support for finding a renewal based on similar, or even identical, policy numbers is not persuasive in the face of the evidence that the policy at issue, which expands coverage to include a second vehicle, simply does not fit the statutory definition of a renewal.

Second, the declarations page of the policy at issue (covering February 16, 1997 to February 16, 1998) indicates only that it is a renewal of the prior policy (covering February 16, 1996 to February 16, 1997). The declarations page does not indicate that it is a renewal of the policy in effect in 1993 when the exclusion was executed. Further, based on the fact that the addition of a vehicle to an existing policy cannot be a renewal of that policy, we can conclude that the 1998 policy is not a renewal of the 1993 policy.
[6] See also Smith v. Foret, 98-1142, pp. 7-8 (La.App. 1 Cir. 5/14/99), 734 So.2d 922, 927; Daigle v. Allstate Ins. Co., 96-1352, p. 2 (La. App. 4 Cir. 3/5/97), 690 So.2d 261, 262; Lovoi v. Ladreyt, 94-1002, p. 3 (La.App. 5 Cir. 4/12/95), 655 So.2d 387, 388; Doyle v. Titan Indem. Co., 629 So.2d 516, 520 (La.App. 5th Cir.1993); Thibodeaux v. Champion Ins. Co., 614 So.2d 232, 234 (La.App. 3rd Cir.1993); Tully v. Liberty Mut. Fire Ins. Co., 516 So.2d 435, 439 (La.App. 1st Cir.1987).
[7] La. Acts 1999, No. 732, § 1 added the following sentence to La.Rev.Stat. § 22:1406(D)(1)(a)(ii), Louisiana's UM statute: "Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms."
[1] Alternatively, insurers can seek clarifying legislation similar to the 1999 legislation regarding the effect of changes to an existing policy on the necessity for a new uninsured motorist selection form.