991 So.2d 505 (2008)
Darin Shane PENDARVIS and Penny Pendarvis
v.
LIBERTY MUTUAL INSURANCE CO.
No. 2007 CA 2092.
Court of Appeal of Louisiana, First Circuit.
May 2, 2008.
*506 Keith S. Giardina, Baton Rouge, Louisiana, for Defendant/Appellant, Liberty Mutual Insurance Company.
S. Alfred Adams, Baton Rouge, Louisiana, for Plaintiffs/Appellees, Darin Shane Pendarvis and Penny Pendarvis.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
The defendant, Liberty Mutual Insurance Company (Liberty Mutual), appeals a judgment of the trial court that determined that its insurance policy provided $25,000 in uninsured/underinsured motorist bodily injury (UMBI) coverage to the plaintiffs, Penny and Darin Pendarvis, and awarded the plaintiffs that amount. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On August 17, 2004, Penny Pendarvis was injured in an automobile accident in Walker, Louisiana, The plaintiffs settled their claims with the driver of the other vehicle and her insurer, USAgencies, for its policy limits of $10,000, and then filed suit against Liberty Mutual seeking damages under underinsured motorist coverage. On February 15, 2006, Liberty Mutual filed a motion for partial summary judgment or, in the alternative, a declaratory judgment, seeking to have the trial court declare that at the time of the accident the coverage afforded to the plaintiffs was economic-only uninsured/underinsured motorist bodily injury coverage with limits of $10,000 per person and $20,000 per accident. The motion was denied,[1] and a *507 bench trial was held on May 30, 2007. The trial court determined that the UMBI coverage form, signed by Mr. Pendarvis on August 29, 2000, was not applicable at the time of the accident herein and, therefore, UMBI coverage was available in the amount of $25,000 per person and $50,000 per accident. Judgment was signed on June 20, 2007, in favor of the plaintiffs and against Liberty Mutual for the $25,000 amount.
Liberty Mutual has suspensively appealed, asserting that the trial court erred in not finding that the UMBI insurance coverage it provided the plaintiffs was limited to "Economic-Only UMBI Coverage" in the amount of $10,000 per person and $20,000 per accident.

DISCUSSION
In all automobile liability insurance policies delivered in this state covering vehicles registered in this state, Louisiana law requires uninsured motorist (UM) coverage in the same amount as the bodily injury liability coverage, unless "any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage." LSA-R.S. 22:680(1)(a)(i). "Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance" for that purpose, be "signed by the named insured or his legal representative" and "shall be conclusively presumed to become part of the policy." LSA-R.S. 22:680(1)(a)(ii). "A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage." Id. Further, "[a]ny changes to an existing policy, regardless of whether these create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms." Id.[2]
*508 The record shows that the Pendarvises purchased an automobile insurance policy from Liberty Mutual on August 12, 2000, with bodily injury liability limits of $10,000 per person and $20,000 per accident, and property damage limits of $10,000 per accident (10/20/10). UMBI coverage was in the amount of 10,000/20,000. Thereafter on August 29, 2000, Mr. Pendarvis made changes to the policy of insurance, which included increasing the bodily injury liability limits to 25,000/50,000 and property damage to $25,000 per accident. With regard to UMBI coverage, Mr. Pendarvis changed the coverage to economic-loss only and kept it at the 10,000/20,000 amount. In connection therewith, Mr. Pendarvis executed a UMBI selection form for the policy on August 29, 2000. On the form, Mr. Pendarvis initialed option "4", of the five UMBI coverage options. Option 4 provides: "I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with limits lower than my Bodily Injury Liability Coverage." (Emphasis in original.) Further, the signature portion of the form, directly above Mr. Pendarvis's signature, provides:
The choice I made; by my initials on this form will apply to all persons insured under my policy. My choice shall apply to the motor vehicles described in the policy and to any replacement vehicles, to all renewals of my policy, and to all reinstatement or substitute policies until I make a written request for a change in my Bodily Injury Liability Coverage or UMBI Coverage.
After August 29, 2000, until the date of the accident on August 17, 2004, policy changes were made on twelve different occasions, which, besides the addition of new vehicles, also included the elimination of vehicles, the substitution of vehicles, the elimination of an operator, a change of address, and yearly policy renewals. At all times pertinent herein, no changes were made in bodily injury liability coverage or UMBI coverage and no new UMBI selection forms were executed.
Liberty Mutual asserts that as a matter of law the addition of a vehicle to an *509 automobile insurance policy does not create a new policy requiring a new UMBI selection form. The plaintiffs, on the other hand, contend that the trial court was correct in finding that adding a vehicle to their coverage changed their coverage requiring the completion of a new UMBI selection form. The plaintiffs contend that adding a vehicle to an existing policy is significant in that the insurance company's exposure is increased significantly, imposing a significant increase in premiums. Plaintiffs also argue that "[a]dding a new vehicle is a `new agreement' that operates to create `new coverage' over a `new automobile'" and that the change in relationships caused by the addition of a vehicle is a material change to a policy that creates an altogether new policy.
In support of these contentions, the plaintiffs cite the case of American Deposit Ins. Co. v. Myles, 00-2457 (La.4/25/01), 783 So.2d 1282, also cited by the trial court. In American Deposit, the supreme court held that adding a new vehicle to existing coverage created a new automobile policy and was not a rewrite or renewal of that policy. However, the issue in American Deposit was the applicability of a named driver exclusion. The supreme court concluded that the named driver exclusion that was in effect in the original policy was not in effect at the time of the accident therein, since the policy terms stated that said exclusion was applicable only to rewrite and renewal policies. American Deposit, 00-2457 at p. 11, 783 So.2d at 1289. Thus, American Deposit is distinguishable from the present matter.[3]
In the instant matter, the record shows that the bodily injury liability limits remained the same from August 29, 2000, when they were raised from 10/20/10 to 25/50/25, until the accident herein on August 17, 2004. At the time the limits were raised in August of 2000, Mr. Pendarvis selected economic-only UMBI coverage with the lower 10/20 limits. Accordingly, based on the policy language and the current statutory provisions, a new UMBI selection form was not required with the addition of a new vehicle to the Pendarvises' policy of insurance.
The plaintiffs also argue: that when they added UM property damage coverage in the amount of $10,000 for each accident, but limited that coverage to the vehicle just placed under the policy, a new policy was created requiring a new UMBI selection form. However, LSA-R.S. 22:680(1)(a)(ii) recognizes that only changes in the "limits of liability" to an existing policy will create a new policy that requires the completion of a new UMBI selection form. UM property damage coverage is not mentioned anywhere on the UMBI coverage form. Nor can we equate *510 "limits of liability" to UM property damage coverage. Further, we cannot find that LSA-R.S. 22:680 is ambiguous as suggested by the plaintiffs. The plaintiffs' arguments are without merit.
Accordingly, we find that the trial court erred in determining that the addition of a new vehicle to the plaintiffs' insurance policy created a new policy requiring the execution of a new UMBI selection form. We also determine that the UMBI selection form signed on August 29, 2000, remained in force and effect at the time of the accident on August 17, 2004, and that it provided economic-only UMBI coverage in the amount of $10,000 per person and $20,000 per accident.
Further, we find that the only economic damages proven or stipulated to were those medical expenses totaling $3,296.64. However, the judgment of the trial court awarded a credit for said $3,296.64. The award of this credit has not been assigned as error, as the plaintiffs have not answered the appeal. There being no additional economic-only bodily injury damages established, we reverse the trial court's award of damages and find that the Pendarvises are not entitled to any recovery under the policy of insurance issued by Liberty Mutual other than the $3,296.64, which was previously tendered.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it 1) allowed Liberty Mutual a credit in the amount of $3,296.64 for medical bills it paid prior to trial, and 2) taxed the $600 testimonial fee of Douglas Davidson, M.D., and the court reporting transcript fee of $247.75 for the preservation of the testimony of Dr. Davidson as costs of court.[4] In all other respects, the judgment is reversed. Costs of this appeal are assessed to the plaintiffs.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Liberty Mutual applied for a supervisory writ to this court, which was denied. A panel of this court declined to exercise its supervisory jurisdiction, finding that under Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981), Liberty Mutual would have an adequate remedy by review on appeal. See Pendarvis v. Liberty Mutual Insurance Company, 2006 CW 1256 (La.App. 1 Cir. 9/5/06) (unpublished writ action).
[2] LSA-R.S. 22:680(1)(a)(i) and (ii) provide:

The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economiconly coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
[3] We note that American Deposit found the reasoning in the case of Donaghey v. Cumis Insurance Society, 600 So.2d 829, 831 (La. App. 3 Cir.1992), regarding UM waivers, applicable to its analysis. In Donaghey, the third circuit determined that the addition of a vehicle to an existing policy created a new policy requiring new UM selection forms. The supreme court stated that the Donaghey rule was based on the premise that a waiver of UM coverage signed prior to an expansion of coverage, such as in the case of adding an automobile, could no longer be valid because an individual would be rejecting coverage before the opportunity ever existed to accept it. American Deposit, 00-2457 at pp. 10-11, 783 So.2d at 1289. Significant to the present case, the supreme court recognized that the Donaghey rule was legislatively overruled by La. Acts 1999, No. 732, § 1, when LSA-R.S. 22:1406(D)(1)(a)(ii) (LSA-R.S, 22:680's predecessor) added the following sentence: "Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms." American Deposit, 00-2457 at pp. 10-11, 783 So.2d at 1289.
[4] We note that the taxing of costs and fees in this matter was not assigned as error.