|,ROTHSCHILD, Judge.
In this contract dispute, Crompton Corporation (formerly “Witco Corporation”) appeals from a summary judgment rendered in favor of Gulf Environmental Science and Technology, Inc. (“GEST”). For the reasons stated more fully herein, we affirm.

Facts and Procedural History

Plaintiffs, Byron P. Coulon, Sr. and his wife Mary Coulon, filed the instant suit for damages against several defendants, including Witco Corporation and GEST, alleging that Mr. Coulon was employed by Witco at its plant in Taft, Louisiana from 1978 to 1999. During this time, plaintiffs allege that Mr. Coulon was exposed to toxic chemical vapors which caused him severe and permanent neurological damage. Plaintiffs allege that Witco knew of the presence of these vapors yet intentionally exposed Mr. Coulon to harm by requiring him to work under these conditions. Plaintiffs further allege that as owner of the Taft plant, Witco was strictly liable for defects in the plant equipment which allowed the vapors to leak. In addition, plaintiffs allege that Witco contracted with GEST to monitor the plant for the emission of various vapors, and that GEST failed to use reasonable care to detect or eliminate these harmful vapors.
|3Plaintiffs subsequently filed a first amended petition naming as defendant Crompton Corporation, the successor corporation to Witco Corporation.[1] In their amended petition, plaintiffs further alleged that based on Crompton’s intentional acts involving hazardous and toxic chemicals, Crompton was liable for punitive or exemplary damages.
*1154 Crompton Corporation filed an answer to the plaintiffs’ petition, generally denying its allegations and farther averring that plaintiffs had no cause of action for punitive damages. Subsequently, Crompton Corporation filed a cross-claim against GEST seeking a defense to plaintiffs’ suit and indemnity if necessary based on the terms of a contract between the parties whereby Witco, Crompton’s predecessor corporation, secured industrial hygiene monitoring services by GEST. In response to this cross-claim, GEST filed an answer denying the allegations and subsequently brought a motion for summary judgment as to the allegations of the cross-claim. Crompton subsequently brought its own motion for summary judgment based on the terms of the contract between the parties.
Following a hearing, the trial court denied the motion for summary judgment filed by Crompton against GEST for the reasons orally assigned. In the same ruling, the trial court granted GEST’s summary judgment on the cross-claim and dismissed Crompton’s cross-claim with prejudice.[2] In its written judgment signed on August 9, 2002, the trial court designated the judgment as final pursuant to La. C.C.P. art.1915. It is from this judgment that Crompton Corporation now appeals.

Law and Discussion

On appeal, Crompton contends that the parties entered into a contract which provides that GEST agreed to defend and indemnify Crompton, and that this ^provision in the contract applies to plaintiffs’ claims against Crompton. As such, Crompton argues it is entitled to judgment against GEST requiring GEST to defend Crompton, and that the trial court erred in denying its motion for summary judgment and in granting summary judgment in favor of GEST. Conversely, GEST argues that the provision of the contract relied upon by Crompton does not provide for a defense or indemnity in this case, and further that the terms of the contract are ambiguous and must therefore be construed against Crompton, the drafter of the document.
The record in this matter reveals that Crompton contracted with GEST to provide certain industrial hygiene services, including air sampling and monitoring at the Taft plant. In connection with this work, Crompton forwarded to GEST certain purchase orders to cover the cost of GEST’s professional and analytical services. The record contains a purchase order dated August 20, 1993 which provides that an attached supplement was to be made an integral part of the order. One of these attachments is a twenty page document entitled “General Conditions of the Contract for Construction,” also referred by the parties as “Form 471.” Paragraph 14.6 of that documents provides as follows:
The CONTRACTOR agrees to defend, indemnify, and hold harmless, all at its expense, the OWNER from and against the following described claims: all liens, claims and demands, loss, costs, damages, actions, suits, or other proceedings by whomsoever made, including claims for bodily injuries, death and property loss and damage, brought or prosecuted in any manner based upon, occasioned by, or attributable to the CONTRACTOR, its agents, invitee, *1155 licensee, or Subcontractors and all workmen and persons employed by it or otherwise under its control. Without otherwise limiting the application of this provision, CONTRACTOR and OWNER intend that this provision shall apply to all claims as described herein, which assert any form of negligence, statutory liability of an owner of realty, products liability or strict liability against OWNER.
1 fjCrompton argues that this attachment to the purchase order sent to GEST forms a valid and enforceable contract between the parties. Crompton also argues that GEST accepted the terms of this contract by failing to voice any objection thereto and by leading Crompton to believe that it accepted the terms and conditions of the purchase order and its attachments. Further, Crompton contends that the above-cited provision which was made an integral part of the purchase order requires GEST to defend and indemnify Crompton for all claims which are “in any manner based upon, occasioned by, or attributable to” GEST. Crompton claims that the plaintiffs’ claims fall within the scope of this provision, and that GEST is required to defend the suit and indemnify Crompton.
GEST responds that the contract relied on by Crompton is ambiguous, and under the terms of the contract as written, GEST does not owe a defense or indemnity for Crompton’s own negligence or strict liability or for its intentional acts. The trial court agreed with GEST, and concluded that the terms of the contract do not mandate that GEST provide a defense or indemnification to Crompton based on the allegations of plaintiffs’ petition.
In reviewing a trial court judgment on a motion for summary judgment, the de novo standard of review is utilized. Schroeder v. Board of Supervisors of La. State Univ., 591 So.2d 342 (La.1991). The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Soverign Ins., Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986). Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ. Code art.1983; La.Civ.Code art.2045.
If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ. Code art.2046. When a contract is unclear it | sis to be interpreted against the party who furnished the text. Further, a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. La. C.C. art.2056. Whether or not a contract is ambiguous is a question of law. American Deposit Inc. Co. v. Myles, 00-2457 (La.4/25/01), 783 So.2d 1282, 1286; Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is to be strictly construed. Perkins v. Rubicon, Inc., 563 So.2d 258 (La.1990); Soverign Ins., Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986); Such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms. Stewart v. Winn Dixie La., 96-599 (La.App. 5 Cir. 12/11/96), 686 So.2d 907, 917; *1156 Perkins v. Rubicon, supra. The purpose of the indemnity agreement is to allocate the risks inherent in the activity between the parties to the contract. Stewart, supra, 686 So.2d at 917.
We have carefully reviewed the entire record in this matter, including the purchase orders and its attachments, and we agree with the trial court that the indemnity provisions relied upon by Crompton to support their cross-claim against GEST do not apply under the facts of this case.
We first note that the indemnity provisions are contained in a standard contract executed by Crompton which is entitled “General Conditions for the Contract of Construction.” The work performed by GEST did not involve construction, and the record fails to show the basis for attachment of a document relating to a construction contract. Further, although the standard form was attached to the purchase order issued by Crompton, neither the purchase order nor its attachments were signed by a representative of GEST.
|7The indemnity provisions relied upon by Crompton are contained on page 11 of this attachment in Section 14.6 and provides that GEST agrees to defend, indemnify, and hold harmless Crompton from all claims and demands which are “based upon, occasioned by or attributable to” GEST. However, Crompton has failed to show how plaintiffs’ claims against it are due to the fault of GEST, or that the plaintiffs’ claims against Crompton are “based upon, occasioned by or attributable to” GEST. Plaintiffs allege that Crompton is liable for its actions at the Taft plant during a twenty-year period. The record in this case shows that GEST agreed to provide air sampling and monitoring during 1993 and 1994. Under these circumstances, we fail to find plaintiffs’ injuries were based upon or attributable to the performance of the sampling and monitoring services by GEST.
Further, the indemnity clause in this ease does not contain language evidencing a clear and unequivocal intent for GEST to defend and indemnify Crompton for Crompton’s own negligence, strict liability or intentional acts. Although Crompton relies on the last sentence of the indemnity provision to support its position that GEST is obligated to defend and indemnify it for all claims, we fail to find any express language in this agreement regarding the negligence of Crompton. The first sentence of the indemnity provision requires GEST to defend and indemnify Crompton for claims attributable to GEST. The last sentence of the paragraph simply states that the provisions apply to all claims for negligence, statutory liability, strict liability and products liability. Nothing in this sentence evidences the parties’ intent that GEST indemnify Crompton for its own negligence, strict liability or intentional act.
Any doubt which exists in this standard contract executed by Crompton must be interpreted against Crompton. La. C.C. art.2056. Absent a clear and unequivocal agreement in the contractual provisions that GEST agreed to indemnify Crompton for its own negligence or fault, we agree with the trial judge [sthat the indemnity provisions of this document are applicable in this case. Stewart v. Winn Dixie, La., supra.
Accordingly, we find no error of the trial court in finding as a matter of law that GEST did not owe a defense or indemnity to Crompton under the terms and provisions of Section 14.6 of Form # 471. The judgment of the trial court granting sum *1157 mary judgment in favor of GEST and dismissing Crompton’s cross-claim -with prejudice is therefore affirmed. Appellant shall bear all costs of this appeal.

AFFIRMED.

. Although the original petition names Witco as defendant, we will refer the successor corporation Crompton throughout this opinion for clarity purposes.

. The record indicates that prior to the hearing on the motions for summary judgment, plaintiffs settled with and dismissed their demands against GEST. Thus, the only remaining claim against GEST was the crossclaim filed by Crompton Corporation.