SUSAN M. CHEHARDY, Chief Judge.
IsThe biological mother, T.T., and the biological father, M.M., appeal the termination of their parental rights with regard to their minor child, K.C.C. For the reasons that follow, we reverse in part the juvenile court’s judgment and remand the matter for further proceedings.
PRELIMINARY ISSUE
On April 7, 2015, this appeal was submitted to this Court for consideration by a *393 three-judge panel. On April 30, 2015, pursuant to Art. V, § 8(B) of the Louisiana Constitution, the panel ordered that this case be assigned to a five-judge panel. On May 11, 2015, appellant, T.T., filed a “Motion to Rescind Order for Five Judge Panel,” in which she argues that Art. V, § 8(B) does not apply to the instant case because: (1) the matter arose out of a “juvenile court,” not a “district court”; and (2) the termination of parental rights is not a “civil matter,” but is criminal in nature.
This is an issue of constitutional interpretation. According to the general rule, articles of the constitution are to be construed and interpreted using the same | ¿canons of interpretation applicable to statutes and written instruments. Snow-ton v. Sewerage & Water Bd., 08-0399 (La.3/17/09), 6 So.3d 164, 168. Thus, under the well-established rules of statutory construction, any interpretation of constitutional provisions begins with the language of the constitution itself. Id. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. Id. Unequivocal constitutional provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. Id. Accordingly, we are bound by the plain language of the constitutional provision to which we now turn.
Art. V, § 8(B) provides in pertinent part:
[I]n civil matters only, when a judgment of a district court or an administrative agency determination in a workers’ compensation claim is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment, and a majority shall concur to render judgment.
We first consider appellant’s argument that Art. V, § 8(B) does not apply because termination proceedings are not civil matters, but are criminal in nature. In support of this argument, appellant cites to the right to counsel guaranteed to parents and children in termination proceedings. See La. Ch.C. art. 1016. She seems to contend that because parties in termination proceedings and defendants in criminal proceedings are both guaranteed the right to counsel, it follows that both proceedings are criminal in nature. We are not persuaded by this argument. The right to counsel does not define the nature of the underlying matter; it is a right accorded parties during the adjudication of that matter. Our review of the underlying matter confirms that the termination of parental rights is indeed a civil matter.
lfiFirst, termination proceedings concern the termination of the parent-child relationship, which is defined by the Louisiana Civil Code as a “legal relationship” [1] and is governed by Title VII of Book 1 of the Louisiana Civil Code. Second, the burden of proof to terminate this legal relationship is “by clear and convincing evidence,” not the more onerous “beyond a reasonable doubt” standard of criminal proceedings. See La. Ch.C. art. 1035. And third, when the Louisiana Children’s Code is silent, termination proceedings are to be governed by the Louisiana Code of Civil Procedure. See La. Ch.C. art. 104. For these reasons, we reject appellant’s argument that termination proceedings are criminal in nature and conclude that they are civil for purposes of Art. V, § 8(B).
*394 Next, we consider appellant’s argument that a “juvenile court” is not a “district court” for purposes of Art. V, § 8(B). Given the provision’s exclusive reference to judgments of district courts and administrative agency determinations in workers’ compensation claims, rules of statutory interpretation necessitate the conclusion that judgments of juvenile courts, and any courts other than “district courts,” are to be excluded from this provision. See Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 187 (“[Wjhen the legislature specifically enumerates a series of things, the legislature’s omission of other items, which could have been easily included in the statute, is deemed intentional.”).
Indeed, the Louisiana Supreme Court has held that “[b]y its very terms, this provision is limited to district court judgments which are modified or reversed.” Am. Deposit Ins. Co. v. Myles, 0-2457 (La.4/25/01), 783 So.2d 1282, 1285 (Emphasis original). In that case, the supreme court considered a judgment originating from the First City Court of the City of New Orleans and concluded that “by implication, this provision does not apply to city court judgments.” Id. | (¡(Emphasis original). See also Snowton, 6 So.3d at 168-70 (holding Art. V, § 8(B) does not apply to judgments rendered by the office of workers’ compensation).[2] Similarly, the Louisiana Fourth Circuit found, in dicta, that a literal reading of Art. V, § 8(B) supports the interpretation that “a juvenile court is not a district court for purposes of [Art. V, § 8(B) ].” See State v. Allen, 11-0693 (La.App. 4 Cir. 1/4/12), 83 So.3d 1160, 1164, writ granted, vacated on other grounds, 11-2843 (La.4/13/12), 84 So.3d 1288.
We disagree with this literal interpretation in the context of juvenile matters. Interpreting the provision to apply only to “district courts,” to the exclusion of “juvenile courts,” yields the absurd consequence that Art. V, § 8(B) can apply to juvenile matters in every judicial district except those in Caddo, Orleans, Jefferson, and East Baton Rouge Parishes. This is because each of these four parishes has a separate “juvenile court” exercising exclusive juvenile jurisdiction within the parish.[3] In all other judicial districts, juvenile matters may be heard by the “district court.” See La. Ch.C. art. 302.[4] Consequently, *395 under appellant’s proposed 17interpretation, if this matter, ie., the termination of parental rights, arises in a judicial district where no separate juvenile court exists and the “district court” hears the matter, Art. V, § 8(B) applies. Yet, because this matter arose in Jefferson Parish and was heard by the separate “juvenile court,” Art. V, § 8(B) does not apply. We do not find that the legislature intended for the applicability of Art. V, § 8(B) to be determined by such arbitrary circumstances as geographic location. Therefore, we decline to adopt a legal interpretation that inhibits equal application of a state constitutional provision. Accordingly, appellant’s motion to rescind the order for a five-judge panel is denied. We now turn to the merits of the appeal.
FACTS AND PROCEDURAL HISTORY
In August or September of 2012, T.T. learned that she was pregnant with K.C.C. and informed M.M. that he was the father. Although T.T. and M.M. had a two-year-old son together, M.M. doubted his paternity of K.C.C. (T.T. and M.M., collectively hereinafter, “appellants”).
KC.C. was born in Touro Infirmary Hospital at 3:03 a.m. on March 1, 2013. The nurse’s notes at 5:50 a.m. state: “[Patient] verbalized about open adoption at this time.”
M.M. arrived at the hospital around 8:00 a.m. and was still unsure if the child was his. He called S.S., a former girlfriend who he had known for fifteen years, and told her that T.T. had just delivered a baby. He explained that he was not sure if the child was his; but if it was, he wanted the child. He asked S.S. to find someone to help with the child temporarily, at least until he could confirm if he was the father.
According to S.S.’s recollection of this conversation, M.M. told her that he could not take care of the child and asked S.S. if she would, or knew of anyone who would, take the child, promising to assist financially with his care. S.S. stated | sthat she could not care for the child but would ask around. She called her cousin, G.J., who is acquainted with both T.T. and M.M. G.J. spoke with each individually that day and learned that they wished to put the child up for adoption. G.J. then relayed this information to her brother, E.C., who had been unsuccessful in his attempts to have children with his wife, K.C. (E.C. and K.C., collectively hereinafter, “appellees”).
G.J. sent pictures of the child to E.C., who then forwarded them to his wife. They both “fell in love” with the child and agreed to meet him at the hospital that day. Prior to arriving at the hospital, E.C. spoke on the telephone with M.M., who informed him that T.T. did not intend to keep the child.
Appellees arrived at the hospital and were introduced to T.T. and K.C.C. According to E.C., T.T. assured them that she was comfortable giving the child to them. A discussion of names for the child ensued, during which T.T. permitted ap-pellees to name him since he would be theirs. E.C. executed the “father” portion of the birth certificate; T.T. executed the “mother” portion.
The Maternal Child Discharge Planning form, completed on March 1, 2013, specified that K.C.C. was not to be released to the mother and that adoption was being *396 considered. Handwritten notes of the social worker, dated March 1, 2018, 12:25 p.m., state: “Met [with] mother at bedside; infant present. Discussed adoption plan. Adoption family identified and flying in (possibly) from Washington state. No names available at this time.” Then, at 4:06 p.m. on March 1, 2013, the notes state: “[Patient] changed mind about adoption. Will go with father of baby.”
On March 3, 2013, T.T. and K.C.C. were discharged from the hospital. K.C.C. went home with appellees that day. Appellees brought T.T. to her sister’s house since she did not have a residence of her own. When appellees dropped her |8off, T.T. gave them a box of hand-me-downs from her older child. At this time, T.T.’s sister, L.S., met K.C.C. and appellees. L.S. recalled that appellees told her they would be caring for K.C.C. until appellants could “get on their feet.”
At trial, T.T. admitted that she agreed to have appellees “watch” K.C.C., and physically relinquished him to them; but she claimed that she did not give or intend to give them custody. She maintains that she told appellees the situation was to be temporary. She explained that her plan was to have a family member care for K.C.C. for four or five months.
Approximately one month after KC.C.’s birth, on April 9, 2013, T.T. executed a power of attorney, drafted by K.C. In this document, T.T. granted to appellees “all of [her] powers regarding the care and custody of [K.C.C.].” The document specified those powers as:
Provide total care and custody for the child, including full parental rights[;] Provide for the child’s food, clothing, housing, recreation and travelf;] Obtain medical, dental, and mental health treatment and make health care decision on behalf of the child[;] Make decisions regarding the child’s education, including enrolling in school and in any extracurricular activities.
This document further provided: “The rights, power and authority hereby granted shall remain in full force from March 3, 2013 until March 1, 2031.”[5] The document was signed by T.T., E.C., and K.C., and was notarized. At trial, T.T. explained that by executing this power of attorney, she only intended to grant to appellees the authority to make medical decisions for K.C.C. while he was in their custody. Approximately one month later, on May 21, 2013, after T.T.’s relationship with appel-lees had soured, she executed a notarized document revoking the power of attorney, but never informed appellees of the revocation.
|inSeveral months later, on October 10, 2013, appellees instituted adoption proceedings, filing a petition for intra-family adoption in the Jefferson Parish Juvenile Court.[6] On October 21, 2013, around 9:00 or 10:00 p.m., T.T. showed up to appellees’ residence unannounced. T.T. explained that she was there to take K.C.C., but appellees refused to give up the child. T.T. returned the next night with the police, but still left without K.C.C.
On January 17, 2014, a DNA test was conducted which revealed that “[M.M.] cannot be excluded as the father of the child, [K.C.C.].... [T]he probability of paternity is 99.99%[J” As a result, on February 3, 2014, appellees’ petition for intra-family adoption was dismissed by the juvenile court.
*397 The next day appellees filed a “Petition for Custody and Request for Permission to Petition for Termination of Parental Rights” in the 24th Judicial District Court.[7] On March 8, 2014, appellees filed a “Petition for Termination of Parental Rights” in juvenile court. On March 7, 2014, T.T. filed exceptions of no right and no cause of action in juvenile court. On March 12, 2014, appellees filed a “Motion for Leave of Court to File a Petition for Termination] of Parental Rights,” which the juvenile court granted the next day. The juvenile court denied T.T.’s exceptions on March 31, 2014.
In the meantime, on March 10, 2014, a hearing was held on the custody petition in the 24th JDC. An interim judgment was issued that day in which appellees were granted interim temporary physical custody of K.C.C., and appellants were granted visitation rights beginning on March 11, 2014.
On April 7, 2014, the next hearing on the custody petition was held in the 24th JDC. A second interim judgment was issued that day in which appellees h maintained their interim temporary physical custody of K.C.C. and appellants’ visitation rights were extended. This judgment also imposed the following conditions on appellants’ visitation:
The child shall be picked up by the biological parent with a valid driver’s license or being driven by a licensed driver with a properly installed child seat for a one year old. [Appellees] have the responsibility and right to make sure these two conditions are met before allowing the child to leave.
During this interim custody period, E.C. suspected that T.T. was driving without a driver’s license with K.C.C. in the vehicle. Appellees hired Mark Donegan, a private investigator, to conduct surveillance of T.T. during her visitation with K.C.C. This surveillance was conducted on April 17, 2014. It was not disputed that T.T. did not have a driver’s license at this time.
The surveillance revealed that M.M.’s mother, C.M., drove the vehicle, with T.T. in the passenger seat, when bringing K.C.C. to and from appellees’ residence. However, once away from appellees’ residence, C.M. exited the vehicle, T.T. entered the driver’s seat, and then departed with K.C.C. for several hours before returning to pick up C.M. and have her drive back to appellees’ residence to drop off the child. For this violation of the visitation conditions, visitation was suspended on April 28, 2014.
Trial on appellees’ petition for the termination of parental rights was held on May 5 and 6, 2014. The juvenile court issued its judgment on May 28, 2014. In this judgment, the court terminated the parental rights of appellants; the court freed K.C.C. for adoption; and the court granted custody of K.C.C. to appellees.
On June 11, 2014, appellees withdrew their petition for custody in the 24th JDC. On June 16, 2014, appellants were granted appeals from the juvenile court’s May 28, 2014 judgment.
[ ^ASSIGNMENTS OF ERROR
On appeal, T.T. raises five assignments of error: (1) the juvenile court lacked jurisdiction to terminate parental rights at the request of a party subject to an interim custody order rendered by the 24th Judicial District Court; (2) the juvenile court erred in overruling the exception of no right of action; (3) the juvenile court erred in finding that appellees met their burden of proof by clear and convincing evidence that T.T. intentionally abandoned K.C.C. pursuant to La. Ch.C. art. *398 1015(4)(b)(c); (4) the juvenile court erred in finding that T.T. intended to give K.C.C. up for adoption; and (5) the juvenile court erred in denying the request to incorporate the intra-family adoption record into the instant record.
M.M. raises four assignments of error on appeal: (1) the juvenile court lacked jurisdiction to terminate parental rights at the request of a party subject to an interim custody order rendered by the 24th Judicial District Court; (2) the juvenile court erred in granting appellees’ trial counsel leave of court to file a petition to terminate parental rights pursuant to La. Ch.C. art. 1004(A); (3) the juvenile court erred in allowing appellees’ trial counsel to act as special counsel under La. Ch.C. art. 1004(F); and (4) the juvenile court erred in finding that M.M. intentionally abandoned K.C.C. pursuant to La. Ch.C. art. 1015(4)(b)-(c).
DISCUSSION
In their respective first assignments of error, appellants both argue that the juvenile court lacked jurisdiction to terminate their parental rights pursuant to La. R.S. 13:1599, which provides in pertinent part:
B. In addition, the Juvenile Court for the parish of Jefferson shall have concurrent jurisdiction with the Twenty-Fourth Judicial District Court to establish paternity, establish and modify custody and visitation, and establish and modify alimony and child support in criminal neglect and paternity cases. However, as between the Juvenile Courtfor the parish of Jefferson and the Twenty-Fourth Judicial District Court, the court which renders the initial order for | ^custody, visitation, or support shall have exclusive continuing jurisdiction to modify such order.
Appellants argue that because custody proceedings were pending in the 24th JDC, La. R.S. 13:1599(B) precluded the juvenile court from maintaining jurisdiction of the termination proceedings. In support of this argument, appellants rely on the Louisiana First Circuit’s finding that “the termination of parental rights is the ultimate custody determination.” See In re D.C.M., 170 So.3d 165, 173, 2013 La.App. LEXIS 1185, *20 (La.App.1 Cir. 6/11/13), writ denied, 13-1669 (La.7/17/13), 118 So.3d 1102. Thus appellants claim that only the 24th JDC maintains “exclusive continuing jurisdiction to modify” a custody order, even if that modification is in the form of the termination of parental rights.
La. R.S. 13:1599(B) specifies certain juvenile matters over which the 24th JDC shares concurrent jurisdiction with the Jefferson Parish Juvenile Court. All other juvenile matters not specified, including the termination of parental rights, are within the exclusive jurisdiction of the juvenile court. See La. Ch.C. art. 303. This article provides in part: “A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over: ... (5) Involuntary termination of parental rights proceedings pursuant to Title X.”
While we recognize the logic of the First Circuit’s finding that “the termination of parental rights is the ultimate custody determination!,]” under the plain language of La. R.S. 13:1599(B) and La. Ch.C. art. 303, we cannot find that the juvenile court was without jurisdiction at the time of its May 28, 2014 judgment terminating parental rights. Appellants’ first assignments of error are without merit.
In T.T.’s second assignment of error, she argues that the juvenile court erred in overruling her exception of no right of action.
|14On March 3, 2014, appellees filed their petition to terminate the parental *399 rights of appellants. On March 7, 2014, T.T. filed an exception of no right of action, arguing that appellees lacked a right of action to pursue this termination petition. On March 12, 2014, Mr. Tilton R. Hunter, Jr., appellees’ trial counsel, filed a motion for leave of court to file a termination petition pursuant to La. Ch.C. art. 1004(A). The juvenile court signed the order the next day, granting Mr. Hunter leave to file the petition pursuant to La. Ch.C. art. 1004(A). On March 31, 2014, the juvenile court overruled T.T.’s exception. On appeal, T.T. argues that the court erred in this ruling because La. Ch.C. art. 1004 does not provide a private right of action to terminate parental rights.[8]
The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Indus. Cos. v. Durbin, 02-0665 (La.1/28/03), 837 So.2d 1207, 1216. As a question of law, we review the exception of no right of action de novo. See Wells v. Fandal, 13-620 (La.App. 5 Cir. 2/12/14), 136 So.3d 83, 87, writ denied, 14-0511 (La.4/25/14), 138 So.3d 645.
Before turning to the specific article at issue, we first consider the general precepts governing the involuntary termination of parental rights in Louisiana.[9] Our supreme court has articulated the unique concerns present in these cases as follows:
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the |1Rchild. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.
The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose *400 of involuntary termination proceedings is to provide the greatest possible protection. to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the'courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration.
In re J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 810-11 (citations omitted).
With the foregoing in mind, we now consider La. Ch.C. art. 1004, entitled “Petition for termination of parental rights; authorization to file[.]” This article delineates the exclusive procedures for instituting a petition for the involuntary termination of parental rights. It provides:
A. At any time, including in any hearing in a child in need of care proceeding, the court on its own motion may order the filing of a petition on any ground authorized by Article 1015.[10]
|1(iB. Counsel appointed for the child pursuant to Article 607 may petition for the termination of parental rights of the parent of the child if the petition alleges a ground authorized by Article 1015(4), (5), or (6) and, although eighteen months have elapsed since the date of the child’s adjudication as a child in need of care, no petition has been filed by the district attorney or the department.
C. The district attorney may petition for the termination of parental rights of the parent of the child on any ground authorized by Article 1015.
D. The department[11] may petition for the termination of parental rights of the parent of the' child when any of the following apply:
(1) The child has been subjected to abuse or neglect after the child is returned to the parent’s care and custody while under department supervision, and termination is authorized by Article 1015(3)0).
*401 (2) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful, and termination is authorized by Article 1015(3)(k).
(3) The child has been abandoned and termination is authorized by Article 1015(4).
(4) The child has been placed in the custody of the state and termination is authorized by Article 1015(5).
(5) The child is in foster care because the parent is incarcerated and termination is authorized by Article 1015(6).
E. When termination is authorized by Article 1015, other than on the grounds specified by Paragraph D of this Article, by special appointment, the district attorney may designate counsel for the department as a special assistant authorized to act in his stead in all such termination actions or in a particular case.
]17F. By special appointment for a particular case, the court or the district attorney may designate private counsel authorized to petition for the termination of parental rights of the parent of the child on the ground of abandonment authorized by Article 1015(4).
G. Foster parents who intend to adopt the child may petition for the termination of parental rights of the foster child’s parents when, in accordance with Article 702(D), adoption is the permanent plan for the child, the child has been in state custody under the foster parent’s care for seventeen of the last twenty-two months, and the department has failed to petition for such termination.
H. When termination is authorized by Article 1015(1) or (2) and no petition is filed to terminate the parental rights of the surviving parent pursuant to Paragraph A, C, or E of this Article after a written request to file such action is made to the district attorney by any interested person and no petition is filed within sixty days by the district attorney, that person may file suit to terminate the parental rights of the surviving parent.
We must determine whether appellees were authorized to institute termination proceedings pursuant to this article.
With retained counsel, appellees filed their petition for the termination of parental rights. Thereafter, apparently recognizing non-compliance with La. Ch.C. art. 1004 and attempting to cure this defect, appellees’ counsel sought leave of court to file a termination petition pursuant to La. Ch.C. art. 1004(A). The juvenile court granted this request, yet a petition did not follow. We find that the court erred in granting counsel leave to file a petition pursuant to La. Ch.C. art. 1004(A). This provision only authorizes the filing of a termination petition by order of the court “on its own motion.” Since the order permitting appellees to file a petition did not originate on the court’s own motion, appel-lees were not authorized to institute termination proceedings pursuant to La. Ch.C. art. 1004(A).
In their brief to this Court, appellees argue that they were authorized to file their petition pursuant to La. Ch.C. art. 1004(F). In support of this argument, they rely on 1997 Official Revision Comment (g) of La. Ch.C. art. 1004, which provides in pertinent part: “Paragraph F clarifies the fact that the court, as well as Lathe district attorney, may authorize private counsel to initiate a termination case based on the ground of abandonment.”
We reject this argument for the following reasons.
*402 Mr. Hunter was not granted leave to file a termination petition pursuant to La. Ch.C. art. 1004(F). Rather, he expressly sought and was expressly granted leave to file a petition pursuant to La. Ch.C. art. 1004(A), which, as we found above, does not permit a court to grant the authority to file a termination petition on the motion of counsel. Yet, even if he had sought and been granted leave to file a petition pursuant to La. Ch.C. art. 1004(F), this too would have been error since La. Ch.C. art. 1004(F) does not permit a court to grant the authority to file a termination petition on the motion of counsel. In any event, Mr. Hunter did not move for the authority to file a termination petition. Instead, he obtained leave of court to retroactively legitimize a previously-filed noncompliant petition. This too, we find, is not permitted by La. Ch.C. art. 1004(F).
In addition to noncompliance with the plain language of the article, we further find that neither appellees nor their counsel is authorized to institute termination proceedings for the significant reason that it undermines the paramount concern of termination proceedings: securing the best interest for the child. See La. Ch.C. art. 1001 (“In all proceedings, the primary concern is to secure the best interest for the child....”). In addressing a comparable factual scenario, the Louisiana Second Circuit reached a similar conclusion. There, the biological mother filed a petition to terminate the biological father’s parental rights pursuant to La. Ch.C. art. 1015(4). See In re T.E.R., 43,145 (La.App. 2 Cir. 3/19/08), 979 So.2d 663, 664. On the same date that the petition was filed, the district court signed an order granting the mother’s request that her attorney be appointed as special counsel pursuant to La. Ch.C. art. 1004(F) to prosecute the termination of lipthe father’s parental rights. Id. Thereafter, an amended petition was filed with this special counsel as the petitioner. Id. at 665. The father pleaded the peremptory exception of no right of action, which the district court denied. Id.
On supervisory review, the Second Circuit reversed the district court, sustained the father’s exception of no right of action, and vacated the order appointing the mother’s attorney to seek termination of the father’s parental rights. T.E.R., 979 So.2d at 668. In reaching this conclusion, the court stated:
We recognize that the language in La. Ch.C. art. 1004(F) permitting appointment of private counsel to bring termination actions based upon abandonment does not prohibit the appointment of one of the [parents’] counsel to seek termination of the other parent’s parental rights. Neither does it authorize such an appointment.
[[Image here]]
We observe that permitting a mother to seek termination of the father’s parental rights even indirectly through appointment of her counsel as special prosecutor amounts to giving the mother the right to prosecute that action. The best interests of a parent seeking termination may not be the same as the best interests of the children. To permit the appointment of the lawyer representing one parent who wants to terminate the parental rights of the other parent creates an unnecessary and potentially serious conflict of interest.
Because termination of parental rights is recognized as one of the most drastic actions a state can take against a citizen, we rely on previous interpretations of the laws on termination stating there is no private right of action to terminate another parent’s parental rights, and there are no circumstances under which one parent may file a petition to terminate the parental rights of another par *403 ent. Absent a clear indication from the Louisiana Legislature that one parent may seek to revoke the parental rights of the other parent by appointment of the revoking parent’s personal attorney, we decline to do so.

Id.

This reasoning applies to the present case. Appellees, who currently have and wish to maintain custody of and ultimately adopt K.C.C., clearly have a personal interest in terminating the parental rights of appellants. Because their interest in that termination is not necessarily tantamount to KC.C.’s best interest, |2nthere is the potential for a conflict of interests. This conflict is not alleviated by the appointment of appellees’ retained counsel, their advocate, to institute or pursue the termination.
We find La. Ch.C. art. 1004 reflects a legislative intent to minimize such conflicts with the child’s interest. This is achieved through procedures that require a termination petition to originate at the behest of or with the prior approval of a disinterested and impartial entity, such as the court, the district attorney, or the Department of Children and Family Services.[12]
This is reflected in the legislative history of the laws governing termination proceedings. Throughout all of its iterations, the law has required a termination petition to originate from or be subject to prior approval by an entity of the state. The source of La. Ch.C. art. 1004, former La. R.S. 13:1601, repealed by Acts 1991, No. 235, § 17, provided in pertinent part: “The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court’s jurisdiction.... ”
The legislature enacted the Louisiana Children’s Code in 1991. See Acts 1991, No. 235. The 1991 Official Revision Comment (c) to La. Ch.C. art. 1001, which defines the purpose of Title X, states that this Title “provides the means by which the state may seek to free a child for adoption without the parents’ consent.” (Emphasis added). Indeed, the first version of La. Ch.C. art. 1004 specified only three options for instituting termination proceedings: the district attorney or the 121 department could petition for the termination of parental rights, or the court, on its own motion, could order the filing of a petition. Thenceforth, in each of the subsequent amendments, La. Ch.C. art. 1004 has consistently required the institution of termination proceedings to originate from or be subject to prior approval by a state entity.[13]
*404 Louisiana courts have similarly construed La. Ch.C. art. 1004, holding “that only the State or an authorized State official may institute termination proceedings.” S.J.G. v. A.A.G., 07-0625 (La.App.l Cir. 9/19/07), 970 So.2d 1022,1027; Mouret v. Godeaux, 04-496 (La.App. 3 Cir. 11/10/04), 886 So.2d 1217,1220; see also In the Interest of D.M., 00-0451 (La.App. 4 Cir. 3/14/01), 785 So.2d 857, 858; In re T.E.R., supra. “There is no private right of action to terminate another parent’s parental rights, and there are no circumstances under which one parent may file a petition to terminate the parental rights of another parent.” S.J.G., supra-, Mouret, supra.
Furthermore, this construction of La. Ch.C. art. 1004 gives effect to the Louisiana Supreme Court’s determination that because “the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens!,]” “due process requires that a fundamentally fair procedure be followed when the [S]tate seeks to terminate the parent-child legal relationship.” J.A., 752 So.2d at 810-11. We conclude that this fundamentally fair procedure must be free from conflicted interests. Accordingly, we hold that La. Ch.C. art. 1004 does not permit a custodian of the child, or counsel therefor — whose personal interest in the matter has the inherent potential to conflict with the child’s best interest — to institute or pursue ^termination proceedings. To find otherwise would permit the termination of parental rights to be adjudicated through a procedure that jeopardizes the child’s best interest and deprives both the child and biological parents of due process. See La. Ch.C. art. 102 (“The provisions of [the Louisiana Children’s Code] shall be liberally construed to the end that each child and parent coming within the jurisdiction of the court shall be accorded due process -”). The best interest of the child is only secured through due process of law.
For the foregoing reasons, we find ap-pellees, and their counsel, do not belong to the class of persons to whom the law grants the cause of action to terminate parental rights. We therefore conclude that the juvenile court erred in overruling T.T.’s exception of no right of action. Because we find merit to T.T.’s second assignment of error, we pretermit discussion of the remaining assignments of error.

DECREE

The March 31, 2014 ruling of the juvenile court overruling T.T.’s exception of no right of action is reversed. The portions of the juvenile court’s May 28, 2014 judgment terminating the parental rights of appellants and freeing K.C.C. for adoption are reversed. This matter is remanded for proceedings consistent with this opinion.

REVERSED IN PART: REMANDED

. See La. C.C. art. 178.

. This decision was legislatively overruled by Acts 20 10, No. 1051, § 1, which amended Art. V, § 8(B) to apply to administrative agency determinations in workers’ compensation claims.

. La. Ch.C. art. 302(1) provides that separately created juvenile courts in Caddo, Orleans, Jefferson, and East Baton Rouge Parishes shall have exclusive original juvenile jurisdiction. The Caddo Parish Juvenile Court was created in 1950 by La. R.S. 13:1564, enacted by Acts 1950, No. 82, § 2. The Orleans Parish Juvenile Court was created in 1950 by La. R.S. 13:1566, enacted by Acts 1950, No. 82, § 2. The Jefferson Parish Juvenile Court was created in 1958 by La. R.S. 13:1599, enacted by Acts 1958, Ex.Sess., No. 10, § 4. The East Baton Rouge Parish Juvenile Court was created in 1990 by La. R.S. 13:1621, enacted by Acts 1990, No. 158, § 1.

.La. Ch.C. Art. 302 provides:
Juvenile jurisdiction shall be exercised as follows:
(1) Special juvenile courts created' by law for Caddo, Orleans, Jefferson, and East Baton Rouge Parishes shall have exclusive original juvenile jurisdiction, and any other jurisdiction conferred by the statute creating them, in the parish or parishes for which they are created. Judges of these courts shall exercise their juvenile jurisdiction according to the provisions of this Code.
(2) District courts, except where a separate juvenile court with exclusive original juvenile jurisdiction is established by law, shall have original juvenile jurisdiction for the parish or parishes within their district.
(3) Parish courts, except where a separate juvenile court with exclusive original juvenile jurisdiction is established by law, shall *395 have original juvenile jurisdiction for their parish. This jurisdiction shall be concurrent with that of the district court.
(4) City courts, except where a separate juvenile court with exclusive original juvenile jurisdiction is established by law, shall have original juvenile jurisdiction for their territorial jurisdiction. This jurisdiction shall be concurrent with that of the district court.

. March 1, 2031 is K.C.C.’s eighteenth birthday.

. This petition states that an intra-family adoption was being pursued due to the fact that E.C. is listed as K.C.C.’s natural father on the birth certificate.

. This petition was filed in 24th JDC Case No. 735-191.

. T.T. did not rely upon La. Ch.C. art. 1004 in support of her exception of no right of action filed in the juvenile court on March 7, 2014. The long-standing rule of law is that appellate courts will not consider issues raised for the first time on appeal, which are not pleaded in the court below, and which the trial court has not addressed. First Bank & Trust v. Bayou Land & Marine Contrs., 12-295 (La.App. 5 Cir. 10/30/12), 103 So.3d 1148, 1152. However, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.” La. C.C.P. art. 2164. Official Revision Comment (a) of this article states: "The purpose of this article is to give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below.” Accordingly, we address T.T.'s argument raised in her second assignment of error.

. At issue here is the involuntary termination of parental rights, which is governed by Title X of the Louisiana Children's Code. Title XI governs the voluntary termination of parental rights.

. La. Ch.C. art. 1015 delineates the grounds for the termination of parental rights, of which subsection (4) provides:
Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a)For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child’s parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

. "Department” refers to the Louisiana De- . partment of Children and Family Services. La. Ch.C. art. 1003(6).

. It is noted that foster parents are permitted to institute termination proceedings in accordance with La. Ch.C. art. 1004(G). While appellees are arguably in a similar position to that of foster parents, we note that foster parents may only institute termination proceedings "in accordance with [La. Ch.C. art. 702(D).]” The 2001 Official Revision Comment explains the purpose for compliance with this provision: “Although foster parents should be authorized to file termination of parental rights proceedings, their action should ripen only after a court has determined that adoption is the most appropriate permanent plan in the best interest of the child, in accordance with [Title VI, Chapter 16 of the Children’s Code,]” of which La. Ch.C. art. 702(D) is a component. Thus, foster parents may only institute termination proceedings after a judicial determination has been made regarding adoption of the child. This element of state intervention is not present in the instant case.

. After its initial enactment in 1991, La. Ch.C. art. 1004 has been amended by: Acts 1992, No. 705, § 1; Acts 1997, No. 256, § 1; Acts 1999, No. 449, § 1; Acts 1999, No. 1067, § 1; Acts 2001, No, 567, § 1; and Acts 2005, No. 80, § 1.