BROWN, C.J.
liOn October 4, 2009, plaintiff, Curtis Brice, was operating a vehicle owned by his employer, Baxter International, Inc., and was acting in the course and scope of his employment when he was involved in an automobile accident. Subsequently, plaintiff filed suit against Baxter’s liability insurer, Old Republic Insurance Co. Baxter had rejected uninsured/underinsured coverage except for “Economic Only” loss up to $100,000 per accident or occurrence. Plaintiff filed a motion for partial summary judgment.[1] The sole issue was the validity of the selection of “Economic Only” UM/ UIM coverage. The trial court granted the motion, finding that the UM/UIM selection form Baxter completed was invalid, and thus, plaintiff was entitled to full ($5 million) liability coverage. Baxter has appealed. Finding that the UM form is valid, we reverse.
FACTS
On October 4, 2009, plaintiff, Curtis Brice, was driving on Lee Drive in Baton Rouge when he was rear-ended by a vehicle owned and driven by Justin Golden. At the time of the collision, Brice was acting in the course and scope of his employment as a senior regional sales manager for Baxter, a multinational pharmaceutical company. Additionally, Baxter owned the vehicle that Brice was operating.
As a result of the collision, Brice suffered injuries to his hip, neck, and right shoulder. Plaintiff started receiving workers’ compensation benefits thereafter. He attempted to return to work but was terminated from his | {.employment by Baxter. At some point after the wreck, Golden’s automobile insurer, U.S. Agencies Casualty Insurance Company, paid plaintiff its full policy limit of $10,000.
On May 11, 2010, Brice had surgery to address his right shoulder AC joint synovi-tis, right shoulder impingement syndrome, and right shoulder labral tear. He also underwent arthroscopy and a “partial removal” of his right “collarbone.” Plaintiff asserts that his injuries and the continuing pain have rendered him “totally disabled,” making it impossible for him to secure gainful employment.
On September -28, 2011, plaintiff filed suit against State Farm Mutual Automobile Insurance Co., his own insurer, and Old Republic, Baxter’s commercial automobile liability insurer.[2]
*1252 The record reflects prior to the October 4, 2009, collision, ■ Old Republic issued a commercial automobile liability policy to Baxter with $5 million liability limits for the policy period May 1, 2008, through May 1, 2009. This policy was renewed for May 1, 2009, through May 1, 2010. Old Republic does not dispute that all premiums were paid prior to the collision.
On August 30, 2012, plaintiff filed a motion for summary judgment. Brice argued that since Baxter was covered for liability purposes, he was also an insured for UM coverage as a matter of law unless the UM coverage was validity rejected by his employer. Plaintiff asserted that on March 12, 2009, an employee of Baxter, Marie Kup-ferschmid, executed three UM | .¡forms “UA 182e” for Category 1 through Category 3 Motor Vehicles.[3] However, Brice asserted: (1) the UM rejection forms do not identify Baxter as the named insured; (2) the forms do not distinguish whether Kup-ferschmid executed them as the “legal representative” or “named insured;” and (3) none of the UM rejection forms identified as “UA 182e” had Policy No. MWTB20158 listed on them at the time of execution. Plaintiff argued that the UM rejection forms were not properly executed as required by the Louisiana Supreme Court in Duncan v. U.S.A.A. Insurance Co., 06-0363 (La. 11/29/06), 950 So.2d 544. According to plaintiff, the Old Republic policy provides full UM limits of $5,000,000 for bodily and economic damages.
In reply, Old Republic, citing Bulletin 08-05 issued by the Commissioner of Insurance, argued that the current UM/UIM coverage form does not require a policy number. Old Republic asserted that it satisfied all of the other requirements of Duncan, and Kupferschmid signed the rejection form in her capacity as a duly authorized representative of Baxter. Old Republic further argued that waivers are presumptively valid.
On March 20, 2013, plaintiff and State Farm filed a joint order to dismiss with reservation of rights. Brice sought to dismiss, with prejudice, all of the rights, claims, and demands against State Farm, and reserve all of the aforementioned against Old Republic. Subsequently, the trial court granted this motion.
|4On March 24, 2016, Brice filed the instant motion for partial summary judgment. On May 23,2016, the trial court held a hearing, and on June 27, 2016, the trial court gave oral reasons for judgment in support of its ruling granting plaintiffs motion. A written judgment followed on August 15, 2016. The trial court ruled that Old Republic’s “Category 1” UM selection form for the 2009-2010 policy period was invalid and thus the policy had $5 million in bodily injury UM limits on the day of plaintiffs 2009 accident.
Old Republic has appealed from this adverse judgment.
DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Smitko v. Gulf S. Shrimp, Inc., 11-2566 (La. 07/02/12), 94 So.3d 750; Rain and Hail, L.L.C. v. Davis, 49,813 (La. App. 2 Cir. 05/20/15), 165 So.3d 1204; Monroe Surgical Hospital, LLC v. St. Francis Medical Center, Inc., 49,600 (La. App. 2 Cir. 08/21/14), 147 So.3d 1234, writ *1253 denied, 14-1991 (La. 11/21/14), 160 So.3d 975.
Because the insurer bears the burden of proving a valid rejection of UM coverage or selection of lower limits, when plaintiff sought summary judgment in this case, he did not bear the burden of proving that the UM rejection form at issue is invalid. Gray v. American National Property & Casualty Co., 07-1670 (La. 02/26/08), 977 So.2d 839. Thus, Brice was not required to negate all essential elements of Old Republic’s claim, action, or defense, but'rather to point out to the court that there is an absence of factual ^support for one or more elements essential to Old Republic’s claim, action, or defense. La. C.C.P. art. 966(C); Gray, supra.
La. R.S. 22:1295 governs UM coverage in Louisiana.[4] It provides, in pertinent part as follows:
(l)(a)(i) No automobile liability, insurance covering liability arising out of the ownership, maintenance, or usé of any motor vehicle shall be delivered or- issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section....
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the | fisame named insured by the same insurer or any of its affiliates. .'..
Since the purpose of this statute is to provide recovery for automobile victims injured by an uninsured motorist, UM coverage will be read into any automobile *1254 policy unless validity rejected. Duncan, supra; Gray, supra. The statutes providing for UM coverage in the absence of a valid rejection or selection of lower limits must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed. Id. Any exclusion from coverage must be clear and unmistakable. Id. The insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits. Id.
In Duncan, 950 So.2d at 551, the supreme court reviewed the form created by the commissioner of insurance for waiver of UM coverage and laid out six tasks which are required to successfully complete the waiver form:
[Essentially, the prescribed form involves six tasks:]
(1) initialing the selection or rejection of coverage chosen;
(2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident;
(3) printing the name of the named insured or legal representative;
(4) signing the name of the named insured or legal representative;
(5) filling in the policy number; and
(6) filling in the date.
In August of 2008, the Commissioner of Insurance issued Bulletin No. 08-02 with a revised UM form. It is this UM form that Baxter purported to complete. One of the purposes of Bulletin 08-02 was to provide guidance on what constitutes a “properly completed” UM form. Notably, Bulletin 08-02 removed the Duncan requirement (# 5) that the policy number be filled in on |7the UM form. However, Bulletin 08-02 provided that the following tasks must be completed by the insured:
1) His/Her signature;
2) His/Her printed name to identify his/ her signature;
3) The date the form is completed; and
4) Initials to select/reject UMBI coverage prior to signing the form.
Bulletin 08-02 also states that “if the insured selects lower limits (available in options 1 and 3 of the revised UM form) the exact amount of coverage must be printed on the appropriate line on the revised UM form prior to the insured signing the form.”
In Gray, supra, the supreme court held that a UM form was not valid when it was initialed and signed in blank by a representative of the insured and subsequently completed and backdated by an insurance agency employee who then sent the form to the insured. The court noted that the Duncan tasks must be completed prior to the signature. Id.
In support of plaintiffs motion for summary judgment, he attached the depositions of Peggy Vogel and Marie Kupfer-schmid.[5]
In Vogel’s deposition, she stated that in 2009, she was a senior account specialist for AON Risk Services, Inc. In 2009, AON was acting in a brokerage capacity for Baxter in procuring commercial auto insurance. In discussing her involvement *1255 with the 2009 policy, Vogel stated that the policy would first go to AON before being submitted to Baxter. Prior to submitting the policy to Baxter, Vogel would meet with “someone” at|sBaxter to discuss what type of coverages the company would want on a yearly basis. Vogel testified that for the 2009 policy, she filled in “$100,000” for “Economic Only” UM coverage and printed the name “Marie Kupferschmid” on all three UM forms. Vogel could not recall whether Kupferschmid gave her the specific authority to write $100,000 or print Kupferschmid’s name on the form. When asked why she did this, Vogel stated that she “did it as an administrative assistance to the client,” and that she wrote down $100,000 because that is what Baxter had selected in previous years. Vogel stated that Baxter makes the ultimate decision on insurance and UM coverage in every state.
In Kupferschmid’s deposition, she stated that in 2009, she was the casualty insurance manager for Baxter, and her duties included acquiring and coordinating insurance. She testified that in 2009, AON was Baxter’s broker of record, which meant that AON had the authority to go out to insurance companies to obtain quotes and procure insurance. Kupferschmid stated that in April 2008, she sent Vogel an email giving AON the authority to “bind coverage” to Baxter. In 2009, Baxter’s risk management department made the decision regarding UM coverage. Kupfer-schmid testified that, as part of her duties, she was authorized to make that decision. In 2009, Kupferschmid would generally receive UM forms from all 50 states at one time. For the Louisiana 2009 policy, her hand-printed name and the hand-printed “$100,000” for “Economic Only” coverage was already placed on the UM form when she received it. However, Kupferschmid stated that it was typical that AON would put this on the form. She also confirmed that the UM forms from other states contained markings that were not her own. ^However, Kupferschmid stated that she read the 2009 policy before signing it, and she selected the $100,000 for “Economic Only” UM coverage.
Old Republic does not dispute that for the 2009 UM form, Kupferschmid did not print her name or write in $100,000 “Economic Only” UM coverage. Old Republic concedes that these notations were instead completed by Vogel. Nevertheless, Old Republic argues that since Kupfer-schmid received, read, and signed the 2009 UM forms, they are valid. We agree.
Despite plaintiffs arguments, we note that Bulletin 08-02 does not explicitly state that the blank in which the amount of UM coverage must be completed must be filled in by the insured if the insured selects lower limits. It merely requires that the insured make the selection, which Kupfer-schmid did by initialing and signing the form. Thus, Vogel’s action in inserting the $100,000 ¡amount does not run afoul of Bulletin 08-02. Further, Bulletin 08-02 does not require the insured to physically type or print their name on the form, only that the name of said insured is on the form. See Ponce v. Welch, 15-669 (La. App. 5 Cir. 03/16/16), 191 So.3d 73, writ denied, 16-00720 (La. 06/03/16), 192 So.3d 751.[6]
In Lynch v. Kennard, 09-282 (La. 05/15/09), 12 So.3d 944, the plaintiff argued that a UM selection form was invalid because the insured’s secretary, not the insured himself, wrote the date on his UM selection form. The Louisiana Supreme Court found that the insured’s waiver of *1256 UM coverage was valid, noting that the form, on its face, was “properlyl in completed,” and that a properly completed, and signed form creates a rebuttable presumption that the insured knowingly rejected UM coverage. The court noted that the UM rejection form was signed by the named insured, and the blank next to the option for rejecting UM coverage was initialed by the insured. The court also mentioned that the insured’s name and the policy number were typed oh the form, not written by the insured himself, but the form was found to be valid nonetheless.
Here, Kupferschmid complied with three of the requirements, when she made her signature, dated the form, and initialed her selection for UM coverage.
In this case, Kupferschmid received all of the UM forms from the different states at once. Despite the fact that several of the forms, including the Louisiana 2009 UM form, already had markings on them when she received the forms, these markings were read and authorized by Baxter.
Baxter complied with the Duncan tasks and Bulletin 08-02 because the selection of $100,000 “Economic Only” coverage and Kupferschmid’s printed name appeared on the 2009 UM form when Kupfershcmid initialed and signed it. Kupferschmid made her signature, dated the form, and initialed her selection for UM coverage. Thus, we find that the 2009 UM form was properly completed and valid. o
CONCLUSION
The judgment of the trial court granting summary judgment is REVERSED, and this matter is REMANDED for further proceedings. Costs of this appeal are assessed against plaintiff.

. This was plaintiffs second MSJ. After his first MSJ was denied, plaintiff unsuccessfully took writs to this court.

. Old Republic is also Baxter’s workers’ compensation insurer.

. Category 2 vehicles refer to motor vehicles with a gross vehicle weight over 20,000 and up to 50,000 pounds. Category 3 vehicles refer to motor vehicles with a gross vehicle weight over 50,000 pounds.

. La. R.S. 22:860 was redesignated by the legislature as La. R.S, 22:1295 by Act 415 of the 2008 Louisiana Legislative Session, effective January 1, 2009. This act made no substantive changes to the provision. See Duncan, supra, for a detailed legislative history of the statute.

. In addition to these depositions, plaintiff also attached or adopted by reference a cover letter dated 3/10/09 from AON 1o Old Republic, an affidavit of plaintiff, plaintiff’s first set of discovery to Old Republic, Old Republic's response to plaintiff's requests for admissions, Old Republic’s answers to plaintiff’s first set of discovery, including supplemental responses to request for admissions, Old Republic’s responses to second set of discovery, and a copy of relevant portion of the Old Republic policy.

. In Ponce, supra, the UM form contained the typed name of the insured. The Fifth Circuit held that the UM form was valid even though someone other than the insured typed or printed her name.