STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0578

JOSHUA WILLIAMS

VERSUS

MARCUS TARELL MOSLEY AND
PROGRESSIVE SECURITY INSURANCE COMPANY

Judgment Rendered: ⌐JAN 0 9 2020

* * * * * * *

APPEALED FROM THE NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 669,473, SECTION 26

HONORABLE RICHARD "CHIP" MOORE, JUDGE

* * * * * * *

| | |
|---|---|
| Steve Adams<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant<br>Joshua Williams |
| Brittany M. Courtenay<br>Metairie, Louisiana | Attorney for Defendant/Appellee<br>Progressive Security Insurance<br>Company |

BEFORE: McDONALD, THERIOT, AND CHUTZ, JJ.

Chutz, J. Concurs

**McDonald, J.**

This is an appeal of a trial court judgment granting summary judgment and dismissing a driver's suit against the automobile owner's insurer for UM coverage. After review, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On May 20, 2017, Joshua Williams (Mr. Williams) was driving a 2017 Infinity Q6-0, owned by Lionel Williams, westbound on Hollywood Street in Baton Rouge when he was rear-ended by Marcus Mosley (Mr. Mosley), who was driving a 2007 Chevrolet Impala owned by Oliver Mosley. Mr. Mosley was uninsured. Lionel Williams was insured by Progressive Security Insurance Company (Progressive).

On May 17, 2018, Mr. Williams filed suit against Mr. Mosley and Progressive. Progressive answered the suit and asserted that it provided liability insurance to Lionel Williams; however, it did not provide uninsured/underinsured motorist (UM) coverage to Mr. Williams at the time of the accident as it had been properly rejected on the policy. Progressive also asserted alternative defenses.

Thereafter, Progressive filed a motion for summary judgment, asserting that it did not provide UM coverage to Mr. Williams on the date of the accident, as the UM coverage had been validly rejected. In support of its motion for summary judgment, Progressive attached to its memorandum the following exhibits: the affidavit of Debra Henry, litigation underwriting specialist and records custodian for Progressive, attesting that Lionel Williams had rejected UM coverage on Progressive policy 30206778; a certified copy of the declarations page and Progressive policy 30206778 issued to Lionel Williams; and an executed UM bodily injury coverage form initialed and signed by Lionel Williams.

Mr. Williams filed an opposition to Progressive's motion for summary

2

judgment. He attached to his memorandum the following exhibits: the affidavit of Lionel Williams, stating that he signed the UM rejection form but did not enter his printed name or the date on the form; Commissioner of Insurance Bulletin No. 08-02; and the Progressive policy 30206778 declarations pages.

The motion for summary judgment was heard by the trial court on November 5, 2018, and at the conclusion of the hearing the trial court granted summary judgment in favor of Progressive. On December 3, 2018, the trial court signed a judgment granting summary judgment in favor of Progressive and dismissing the suit against Progressive with prejudice. Mr. Williams appealed the judgment. Mr. Williams makes two assignments of error on appeal. In his first assignment of error, he maintains that the trial court erred in determining that Lionel Williams's addition of seven vehicles to the Progressive policy over a period of nine months did not require the execution of a new UM bodily insurance coverage form. In his second assignment of error, he maintains that the trial court erred in granting summary judgment and dismissing the case because Lionel Williams did not print his name or enter the date on the UM bodily injury coverage form and because there was no proof that those two sections of the form were completed before Lionel Williams signed it.

**STANDARD OF REVIEW**

In determining whether summary judgment is appropriate, appellate courts review summary judgment de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Sanders v. Ashland Oil, Inc.**, 96-1751 (La. App. 1st Cir. 6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case.

3

**Louisiana Workers' Compensation Corp. v. Landry**, 2011-1973 (La. App. 1 Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 2012-1179 (La. 9/14/12), 99 So.3d 34.

## LOUISIANA REVISED STATUTE 22:1295

Louisiana Revised Statute 22:1295 provides in pertinent part:

The following provisions shall govern the issuance of uninsured motorist coverage in this state:

(1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (1)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized in this Section. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Section may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Section with an exclusion for all noneconomic loss. This coverage shall be known as "economic-only" uninsured motorist coverage. Noneconomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.

(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower

4

limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. **A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates.** An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. **Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms.** For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer. (Emphasis added.)

## COMMISSIONER OF INSURANCE BULLETIN 08-02

Commissioner of Insurance Bulletin 08-02, dated August 29, 2008, provides

in pertinent part:

> Pursuant to the 1997 amendment to [La. R.S. 22:] 1406 (redesignated as [La. R.S.] 22:680 by Act 456 of the 2003 Regular Session of the Louisiana Legislature) an insured's automobile liability insurance policy will include [UM] bodily injury coverage at the same limits as the bodily injury liability coverage in the policy unless the insured properly completes and signs a form prescribed by the Commissioner of Insurance (Commissioner) rejecting, selecting lower limits or selecting economic-only coverage. A properly completed and signed [UM] Bodily Injury Coverage Form (UM form) creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.

> When properly completed and signed by the named insured or his legal representative, this UM form shall be conclusively presumed to become part of the policy or insurance contract when issued and delivered. The current UM form was originally prescribed and distributed by the Commissioner in Bulletin LIRC 98-01. With the exception of a statutory reference correction in Louisiana Department of Insurance (LDOI) Bulletin No. 01-05 Amended, the UM form has remained unchanged since it was issued in Bulletin LIRC 98-01.

> . . . . .

5

The following tasks must be completed by the insured:

- His/Her signature

- His/Her printed name to identify his/her signature

- The date the form is completed

- Initials to select/reject UMBI coverage prior to signing the form.

## ASSIGNMENT OF ERROR NO. 1

As noted above, La. R.S. 22:1295 provides that any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new UM selection forms. Progressive's policy shows that Lionel Williams signed and initialed the UM form on November 12, 2013. Lionel Williams states in his affidavit that he initialed and signed the UM form.

In his argument that a new UM rejection form was required because new vehicles were added to the policy, Mr. Williams cites **Donaghey v. Cumis Ins. Soc.**, 600 So.2d 829 (La. App. 3 Cir. 1992); **Perkins v. Guaranty Nat. Ins. Co.**, 95-229 (La. App. 3 Cir. 11/2/95), 667 So.2d 559, writ denied, 96-0759 (La. 5/31/96), 673 So.2d 1033; **Bullock v. Homestead Ins. Co.**, 29,536 (La. App. 2 Cir. 6/20/97), 697 So.2d 712, writ denied, 97-1936 (La. 11/7/97), 703 So.2d 1272; and **Smith v. Foret**, 98-1142 (La. App. 1 Cir. 5/14/99), 734 So.2d 922.

In **Donaghey**, the court found that the addition of a vehicle to an existing policy created an altogether new policy requiring that new UM forms be executed. **Donaghey**, 600 So.2d at 831. The **Donaghey** rule was based upon the premise that a waiver of UM coverage signed prior to an expansion of coverage, as in the case of adding an automobile, can no longer be valid because an individual would be rejecting coverage before the opportunity ever existed to accept it. **American Deposit Ins. Co. v. Myles**, 2000-2457 (La. 4/25/01), 783 So.2d 1282, 1289. That

6

rule of law as it applies to UM waivers was legislatively overruled by La. Acts 1999, No. 732, § 1. **American Deposit Ins. Co.**, 783 So.2d at 1289. The effective date of that Act was August 15, 1999, which is **after** the date of the above cases cited by Mr. Williams.[1] Therefore, those cases are not applicable herein.

In **Tillman v. USAgencies Cas. Ins. Co.**, 46,173 (La. App. 2 Cir. 3/2/11), 58 So.3d 1009, 1012, the second circuit ruled that under La. R.S. 22:1295, the addition of a vehicle to a policy does not require the execution of a new UM rejection form, and affirmed a summary judgment in favor of the insurer. In **Johnson v. Safeway Ins. Co. of La.**, 2011-646 (La. App. 3 Cir. 11/2/11), 76 So.3d 653, 655, the insured substituted, added, or removed vehicles several times. In that case, the third circuit found that even if the number of vehicles changes, a new form is not required unless the insurance limits change, and the court affirmed a summary judgment in favor of the insurer. **Johnson**, 76 So.3d at 655.

In this case, only Progressive's exposure changed with the additional vehicles added to the policy. The policy limits of liability did not change. Therefore, we find no genuine issue of material fact that, pursuant to La. R.S. 22:1295, the addition of new vehicles to the policy, with no change in the limits of liability, did not create a new policy and thus, did not require the completion of new UM selection forms. This assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

In this assignment of error, Mr. Williams maintains that the trial court erred in granting summary judgment and dismissing the case because Lionel Williams did not print his name or enter the date on the UM bodily injury form and because

---

[1] La. Acts 1999, No. 732, § 1 added the following sentence to La. R.S. 22:1406(D)(1)(a)(ii) (Louisiana's UM statute at that time): "Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms." **American Deposit Ins. Co.**, 783 So.2d at 1289, n.7.

there was no proof offered that those two sections of the form were completed before Lionel Williams signed it. Mr. Williams maintains that strict compliance with Commission of Insurance Bulletin 08-02 and **Duncan v. U.S.A.A. Ins. Co.,** 2006-363 (La. 11/29/06), 950 So.2d 544, requires that the insured personally complete the printed name and date sections of the UM selection form, or that the data be entered by another individual before or contemporaneously with the insured signing the form.

Progressive maintains that the jurisprudence holds that it does not matter who prints the name and dates the form, and cites in support of its position, **Ponce v. Welch,** 2015-669 (La. App. 5 Cir. 3/16/16), 191 So.3d 73, writ denied, 2016-00720 (La. 6/3/16), 192 So.3d 751, and **Brice v. State Farm Mutual Automobile Insurance Company,** 51,393 (La. App. 2 Cir. 6/21/17), 223 So.3d 1250.

In **Duncan,** the issue was whether UM coverage was validly waived when the line for the policy number was left blank on the form. The supreme court in **Duncan** found that the UM statute required that the blank for the policy number contained on the form be filled in order to effectuate valid UM coverage, and therefore, UM coverage was not valid in that case. **Duncan,** 950 So.2d at 554. We do not read **Duncan** to require that the insured has to personally complete the printed name and date on the selection form.

This issue was more directly addressed in the **Ponce** case. In **Ponce,** the plaintiff argued that the UM rejection form was invalid because her name was typed on the form instead of being printed by her own hand. The fifth circuit in **Ponce** found that the fact that the insured's name was typed by someone else, instead of being printed by the insured, did not invalidate the form, and affirmed summary judgment in favor of the insurer. **Ponce,** 191 So.3d at 78.

In **Brice,** the second circuit found that Bulletin 08-02 does not require the

8

insured to physically type or print their name on the form. Rather, the court concluded that only the name of the insured was required on the form. **Brice**, 223 So.3d at 1255.

In this case, Lionel William initialed the UM form by the blank indicating that he did not want uninsured/underinsured motorist bodily injury coverage, and he signed the UM form. While Mr. Williams asserts that there is no evidence as to when the date and Lionel Williams' printed name were entered on the form, we note that he does not assert that the form was dated incorrectly or that Lionel Williams did not initial the form and sign his signature on the form. Further, Mr. Williams' affidavit does not assert that his printed name and the date were not on the form when he signed it, or that they were not entered onto the form contemporaneously with his signature. The purpose of the date on the form is simply to indicate the date the form is signed by the insured, which would ostensibly be the effective date of the policy. The purpose of the printed name of the insured on the form is to make clear the name given in the signature line, which may be difficult to read depending upon the insured's penmanship. The fact that the date and printed name of the insured were not filled out by the insured does not invalidate the UM waiver initialed and signed by the insured.

Louisiana Revised Statues 22:1295(1)(a)(ii) provides that a properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. An adverse party must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). We find no genuine issue of material fact herein that rebuts that presumption. This assignment of error has no merit.

9

## DECREE

For the foregoing reasons, the trial court judgment, granting summary judgment in favor of Progressive Security Insurance Company and dismissing it from the suit filed by Joshua Williams, with prejudice, is affirmed. Costs of this appeal are assessed against Joshua Williams.

**AFFIRMED.**